# WHITNEY v. ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued December 13, 14, 1887. — Decided January 9, 1888.

The treaty of February 8, 1867, with the Dominican Republic (art. 9) pro-
vides that " no higher or other duty shall be imposed on the importation
into the United States of any article the growth, produce, or manufacture
of the Dominican Republic, or of her fisheries, than are or shall be pay-
able on the like articles the growth, produce, or manufacture of any
other foreign country or of its fisheries." The convention of January
30, 1875, with the king of the Hawaiian Islands provides for the impor-
tation into the United States, free of duty, of various articles, the prod-
uce and manufacture of those islands, (among which were sugars,) in
consideration of certain concessions made by the king of the Hawaiian
Islands to the United States. Held, that this provision in the treaty
with the Dominican Republic did not authorize the admission into the
United States, duty free, of similar sugars, the growth, produce, or manu-
facture of that republic, as a consequence of the agreement made with the
king of the Hawaiian Islands, and that there was no distinction in prin-
ciple between this case and Bartram v. Robertson, 122 U. S. 116.
By the Constitution of the United States a treaty and a statute are placed
on the same footing, and if the two are inconsistent, the one last in date
will control, provided the stipulation of the treaty on the subject is self-
executing.

THIS was an action to recover back duties alleged to have
been illegally exacted. Verdict for the defendant and judg-
ment on the verdict. The plaintiffs sued out this writ of
error.

Mr. A. J. Willard and Mr. H. E. Tremain for plaintiffs in
error. Mr. M. W. Tyler was with them on their brief.

Mr. Solicitor General for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiffs are merchants, doing business in the city of
New York, and in August, 1882, they imported a large quan-

tity of "centrifugal and molasses sugars," the produce and manufacture of the island of San Domingo. These goods were similar in kind to sugars produced in the Hawaiian Islands, which are admitted free of duty under the treaty with the king of those islands, and the act of Congress, passed to carry the treaty into effect. They were duly entered at the custom house at the port of New York, the plaintiffs claiming that by the treaty with the Republic of San Domingo the goods should be admitted on the same terms, that is, free of duty, as similar articles, the produce and manufacture of the Hawaiian Islands. The defendant, who was at the time collector of the port, refused to allow this claim, treated the goods as dutiable articles under the acts of Congress, and exacted duties on them to the amount of $21,936. The plaintiffs appealed from the collector's decision to the Secretary of the Treasury, by whom the appeal was denied. They then paid under protest the duties exacted, and brought the present action to recover the amount.

The complaint set forth the facts as to the importation of the goods, the claim of the plaintiffs that they should be admitted free of duty because like articles from the Hawaiian Islands were thus admitted, the refusal of the collector to allow the claim, the appeal from his decision to the Secretary of the Treasury and its denial by him, and the payment under protest of the duties exacted, and concluded with a prayer for judgment for the amount. The defendant demurred to the complaint, the demurrer was sustained, and final judgment was entered in his favor, to review which the case is brought here.

The treaty with the king of the Hawaiian Islands provides for the importation into the United States, free of duty, of various articles, the produce and manufacture of those islands, in consideration, among other things, of like exemption from duty, on the importation into that country, of sundry specified articles which are the produce and manufacture of the United States. 19 Stat. 625. The language of the first two articles of the treaty, which recite the reciprocal engagements of the two countries, declares that they are made in consideration

"of the rights and privileges" and "as an equivalent therefor," which one concedes to the other.

The plaintiffs rely for a like exemption of the sugars imported by them from San Domingo upon the 9th article of the treaty with the Dominican Republic, which is as follows : "No higher or other duty shall be imposed on the importation into the United States of any article the growth, produce, or manufacture of the Dominican Republic, or of her fisheries; and no higher or other duty shall be imposed on the importation into the Dominican Republic of any article the growth, produce, or manufacture of the United States, or their fisheries, than are or shall be payable on the like articles the growth, produce, or manufacture of any other foreign country, or its fisheries." 15 Stat. 473, 478.

In *Bartram* v. *Robertson*, decided at the last term, (122 U. S. 116,) we held that brown and unrefined sugars, the produce and manufacture of the island of St. Croix, which is part of the dominions of the king of Denmark, were not exempt from duty by force of the treaty with that country, because similar goods from the Hawaiian Islands were thus exempt. The first article of the treaty with Denmark provided that the contracting parties should not grant "any particular favor" to other nations in respect to commerce and navigation, which should not immediately become common to the other party, who should "enjoy the same freely if the concession were freely made, and upon allowing the same compensation if the concession were conditional." 11 Stat. 719. The fourth article provided that no "higher or other duties" should be imposed by either party on the importation of any article which is its produce or manufacture, into the country of the other party, than is payable on like articles, being the produce or manufacture of any other foreign country. And we held in the case mentioned that "those stipulations, even if conceded to be self-executing by the way of a proviso or exception to the general law imposing the duties, do not cover concessions like those made to the Hawaiian Islands for a valuable consideration. They were pledges of the two contracting parties, the United States and the king of

Denmark, to each other, that in the imposition of duties on goods imported into one of the countries which were the produce or manufacture of the other, there should be no discrimination against them in favor of goods of like character imported from any other country. They imposed an obligation upon both countries to avoid hostile legislation in that respect. But they were not intended to interfere with special arrangements with other countries founded upon a concession of special privileges."

The counsel for the plaintiffs meet this position by pointing to the omission in the treaty with the Republic of San Domingo of the provision as to free concessions, and concessions upon compensation, contending that the omission precludes any concession in respect of commerce and navigation by our government to another country, without that concession being at once extended to San Domingo. We do not think that the absence of this provision changes the obligations of the United States. The 9th article of the treaty with that republic, in the clause quoted, is substantially like the 4th article in the treaty with the king of Denmark. And as we said of the latter, we may say of the former, that it is a pledge of the contracting parties that there shall be no discriminating legislation against the importation of articles which are the growth, produce, or manufacture of their respective countries, in favor of articles of like character, imported from any other country. It has no greater extent. It was never designed to prevent special concessions, upon sufficient considerations, touching the importation of specific articles into the country of the other. It would require the clearest language to justify a conclusion that our government intended to preclude itself from such engagements with other countries, which might in the future be of the highest importance to its interests.

But, independently of considerations of this nature, there is another and complete answer to the pretensions of the plaintiffs. The act of Congress under which the duties were collected authorized their exaction. It is of general application, making no exception in favor of goods of any country. It was passed

after the treaty with the Dominican Republic, and, if there be any conflict between the stipulations of the treaty and the requirements of the law, the latter must control. A treaty is primarily a contract between two or more independent nations, and is so regarded by writers on public law. For the infraction of its provisions a remedy must be sought by the injured party through reclamations upon the other. When the stipulations are not self-executing they can only be enforced pursuant to legislation to carry them into effect, and such legislation is as much subject to modification and repeal by Congress as legislation upon any other subject. If the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, to that extent they have the force and effect of a legislative enactment. Congress may modify such provisions, so far as they bind the United States, or supersede them altogether. By the Constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other, provided always the stipulation of the treaty on the subject is self-executing. If the country with which the treaty is made is dissatisfied with the action of the legislative department, it may present its complaint to the executive head of the government, and take such other measures as it may deem essential for the protection of its interests. The courts can afford no redress. Whether the complaining nation has just cause of complaint, or our country was justified in its legislation, are not matters for judicial cognizance. In *Taylor* v. *Morton*, 2 Curtis, 454, 459, this subject was very elaborately considered at the circuit by Mr. Justice Curtis, of this court, and he held that whether a treaty with a foreign sovereign had been violated by him; whether the consideration of a particular stipulation of the treaty had been voluntarily withdrawn by

one party so that it was no longer obligatory on the other; whether the views and acts of a foreign sovereign had given just occasion to the legislative department of our government to withhold the execution of a promise contained in a treaty, or to act in direct contravention of such promise, were not judicial questions; that the power to determine these matters had not been confided to the judiciary, which has no suitable means to exercise it, but to the executive and legislative departments of our government; and that they belong to diplomacy and legislation, and not to the administration of the laws. And he justly observed, as a. necessary consequence of these views, that if the power to determine these matters is vested in Congress, it is wholly immaterial to inquire whether by the act assailed it has departed from the treaty or not, or whether such departure was by accident or design, and, if the latter, whether the reasons were good or bad.

In these views we fully concur. It follows, therefore, that when a law is clear in its provisions, its validity cannot be assailed before the courts for want of conformity to stipulations of a previous treaty not already executed. Considerations of that character belong to another department of the government. The duty of the courts is to construe and give effect to the latest expression of the sovereign will. In *Head Money Cases*, 112 U. S. 580, it was objected to an act of Congress that it violated provisions contained in treaties with foreign nations, but the court replied that so far as the provisions of the act were in conflict with any treaty, they must prevail in all the courts of the country; and, after a full and elaborate consideration of the subject, it held that "so far as a treaty made by the United States with any foreign nation can be the subject of judicial cognizance in the courts of this country, it is subject to such acts as Congress may pass for its enforcement, modification, or repeal."

*Judgment affirmed.*