# Congressional Authority to Modify an
# Executive Agreement Settling Claims Against Iran

Congress has plenary authority to modify or abrogate preexisting executive agreements or treaties for domestic law purposes, and could thus pass legislation reviving tort claims of American hostages and their families against Iran that might be extinguished by an executive agreement with Iran.

November 13, 1980

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for our opinion whether, if the President enters an executive agreement with Iran settling or extinguishing the claims of American citizens against Iran, Congress could constitutionally override the agreement with a statute reviving such claims. We conclude that Congress has the power to do so.

In our memoranda to you of September 16, 1980, and October 14, 1980, we concluded that the President has the power to enter an executive agreement with Iran that would settle or extinguish the claims of American citizens against Iran. It is settled, however, that Congress may enact legislation modifying or abrogating executive agreements or treaties. *See, e.g., La Abra Silver Mining Co.* v. *United States,* 175 U.S. 423, 460 (1899):

> It has been adjudged that Congress by legislation, and so far as the people and authorities of the United States are concerned, could abrogate a treaty made between this country and another country which had been negotiated by the President and approved by the Senate. *Head Money Cases,* 112 U.S. 580, 599; *Whitney* v. *Robertson,* 124 U.S. 190, 194; *Chinese Exclusion Case,* 130 U.S. 581, 600; *Fong Yue Ting* v. *United States,* 149 U.S. 698, 721.

*See also Reid* v. *Covert,* 354 U.S. 1, 18 (1957); Restatement (Second) of Foreign Relations Law of the United States § 145 (1965) (legislation supersedes executive agreement as domestic law of the United States, but does not affect international obligations). The authorities treat the power of Congress to enact statutes that supersede executive agreements and treaties for purposes of domestic law as a plenary one, not subject to exceptions based on the President's broad powers concerning foreign affairs.

In the present context, the prospect is that despite the existence of an executive agreement settling all claims, Congress might amend the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.,* to abrogate the immunity of the government of Iran for tort claims brought by the hostages or their families. At present, the FSIA codifies generally accepted international law doctrine that accords a foreign state immunity for its governmental acts, but not its commercial ones. *See generally* H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976). In particular, 28 U.S.C. § 1605(a)(2) preserves immunity for tort claims against foreign states, except for those based on torts occurring in the United States and not involving a discretionary function. Therefore, to abrogate a claims settlement, Congress would also except from immunity claims based on injuries suffered in consequence of the seizure of the American embassy in Iran in November, 1979, and subsequent detention of persons found there.

Such an amendment, we believe, would be constitutional, despite its apparent retroactivity. It appears to be well within Congress' general authority to modify or abrogate preexisting executive agreements for domestic law purposes.[1] Also, the government of Iran would have no grounds for objecting to it in the courts of the United States. As we concluded in our memorandum to you of September 16, 1980, entitled "Congressional Power To Provide for the Vesting of Iranian Deposits in Foreign Branches of United States Banks" [p. 265 *supra*], foreign states do not enjoy the protection of the Due Process Clause. Finally, there would appear to be no other pertinent limit on the power of the federal courts to entertain these claims. Sovereign immunity is an affirmative defense that does not vitiate a claim but only prevents recovery. *See* Restatement, *supra,* §§ 71-72. Accordingly, it appears that neither an executive agreement removing the remedy nor a statute restoring it should affect the validity of the underlying claims. *See* Lillich, *The Gravel Amendment to the Trade Reform Act of 1974: Congress Checkmates a Presidential Lump Sum Agreement,* 69 Am. J. Int. L. 837 (1975).

Thus, we conclude that there is no legal impediment to an amendment to the FSIA that would abrogate Iran's sovereign immunity for these claims, if Congress decides to carve an exception to a policy of recognizing immunity for governmental acts that the United States has

---

[1] The Restatement, *supra.* indicates that although domestic law would change, international obligations would not, and would remain enforceable by the usual means, such as suspension of reciprocal obligations and resort to an international forum.

followed consistently since at least 1952. *See* House Report, *supra,* at 7–8. In doing so, Congress could establish a federal cause of action, in order to avoid the vagaries of state tort law.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*