December 11, 1989

### IN THE SUPREME COURT OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CONCEPCION S. WABOL, <u>et al.</u>, | SUPREME COURT NO. 89-005 |
| Plaintiffs/Appellees, | SUPERIOR COURT NO. 84-397 |
| vs. | |
| VICTORINO U. VILLACRUSIS, <u>et al.</u>, | <u>DECISION AND ORDER</u> <u>RE: JURISDICTION</u> |
| Defendants/Appellants. | |

Before J. Dela Cruz, Chief Justice; R. Villagomez and J. Borja, Associate Justices:

VILLAGOMEZ, Associate Justice

#### BACKGROUND

This case originated in the Commonwealth Trial Court (now Superior Court) involving a landowner, Concepcion S. Wabol (hereinafter "Wabol"), against a lessee, Victorino U. Villacrusis (hereinafter "Villacrusis"). Wabol claimed that the lease agreement violated Article XII of the Northern Marianas Constitution in that its term exceeded 40 years, the maximum leasehold duration that a person, not of Northern Marianas descent, could hold. The Trial Court held that the

36

lease was valid, but only for up to 40 years.[1]/

Wabol appealed to the Appellate Division of the District Court for the Northern Mariana Islands (hereinafter "Appellate Division"), and the Appellate Division reversed. The Appellate Division held that the lease provided for a term exceeding 40 years which violated Article XII of the CNMI Constitution and was void ab initio.

Villacrusis appealed the decision of the Appellate Division to the U.S. Court of Appeals for the Ninth Circuit (hereinafter "Ninth Circuit") on February 20, 1987. The appeal at the Ninth Circuit has been briefed, argued, submitted, and is still under advisement. No decision or mandate has been issued by the Ninth Circuit.

On May 2, 1989, the Commonwealth of the Northern Mariana Islands (hereinafter "Northern Marianas") enacted Public Law 6-25 (P.L. 6-25), the relevant parts of which established the Supreme Court for the Northern Mariana Islands (hereinafter "this Court") and provided its jurisdiction. Section 3109(a) of P.L. 6-25 provides that the Supreme Court shall have appellate jurisdiction over all future appeals from the Superior Court. Section 3109(b) provides that the Supreme Court has appellate jurisdiction over all appeals which are pending. Section 3109(c) defines pending appeal to mean any appeal in which the final controlling mandate of the appellate

--------

[1]/ By Constitutional amendment, the 40 years has been increased to 55 years.

tribunal has not been received by the Commonwealth Trial Court.

Pursuant to Section 3109 of P.L. 6-25, Wabol filed an appeal to this Court on June 5, 1989.[2] On July 28, 1989, Wabol filed a motion for a hearing and determination of appeal on the merits. Villacrusis responded by filing an opposition to motion to assume jurisdiction over appeal on October 20, 1989, and Wabol filed a reply on October 30, 1989. The matter came for a hearing before the full panel of this Court on November 27, 1989.

Wabol contends that on May 2, 1989, this Court assumed jurisdiction over this case pursuant to Section 3109, which divested jurisdiction of the Ninth Circuit at the same time. Villacrusis on the other hand contends that Section 3109 conflicts with 48 U.S.C. 1694b(c) (hereinafter "Section 1694b(c)), is invalid, and does not vest in this Court appellate jurisdiction over Commonwealth cases[3] pending in the Ninth Circuit, unless the U.S. Congress amends Section 1694b(c) to allow such an effect.

---

[2] P.L. 6-25 does not provide the mechanism for transfer of any pending appeal to this Court. Lacking such guidance, Wabol brought this case here by filing a new notice of appeal. We accept such method of bringing the case before us.

[3] When we use the term "Commonwealth case," we mean a case originating in the Commonwealth Trial Court (now Superior Court) which arises under the Northern Marianas Constitution or laws.

## ISSUE

The issue we are confronted with is whether the Northern Marianas has the authority to vest in this Court appellate jurisdiction over cases which originated in the Commonwealth Trial Court involving only local matters and are pending before the Ninth Circuit as of May 2, 1989.

## ANALYSIS

Wabol brought this case before this Court requesting that we rule on the merits. Villacrusis has opposed, claiming that we lack jurisdiction. Both have asked this Court to first rule on the jurisdictional issue, and we have decided to do so. This order addresses only the issue of jurisdiction.

Villacrusis does not dispute that Section 3109(a) of P.L. 6-25 effectively divested appellate jurisdiction of the Ninth Circuit with respect to _future_ appeals taken from the Commonwealth Superior Court on local, non-federal issues. ("Future" means after May 2, 1989.) Villacrusis takes no position on whether Section 3109(b) divested the Appellate Division of appellate jurisdiction over pending appeals there. Wabol, on the contrary, contends that both the Appellate Division and the Ninth Circuit were divested of jurisdiction over Commonwealth cases pending on appeal as of May 2, 1989.

Clearly the issue before this Court touches upon the relationship between the Northern Marianas and the United States. The issue requires this Court to carefully and painstakingly review the enactment of P.L. 6-25 to see if the

39

Northern Marianas acted in accordance with, or contrary to, the Covenant to Establish A Commonwealth of the Northern Mariana Islands in Political Union With the United States of America (Commonwealth Code, p. B-101 hereinafter "Covenant").

As stated in Section 102 of the Covenant:

> The relations between the Northern Mariana Islands and the United States will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands. (Emphasis added.)

Therefore, we begin our analysis by examining the nature, purpose, and responsibilities of the parties under the Covenant. The Covenant is a permanent, binding, and solemn agreement entered into between two sovereign peoples. On the one side is "The People of the Northern Mariana Islands" and on the other side is "The United States of America." See Commonwealth Code, p. B-121, parties executing the signature page.

The Covenant is not just a simple contract. It is the product of years of negotiations between the representative of the people of the United States of America (through the President) and representatives of the people of the Northern Marianas. Its composition is complex and its identity unique. It is a binding commitment by two peoples with certain provisions being so sacrosanct as to be unchangeable without the consent of both parties.

The purpose of the Covenant, as set forth in its preamble, states that the parties, "...have entered into this Covenant in order to establish a self-governing Commonwealth for the Northern Mariana Islands... and to define the future relationship between the Northern Mariana Islands and the United States...." (Emphasis added.) It further states, "This Covenant will be mutually binding when it is approved by the United States...and by the people of the Northern Mariana Islands...constituting on their part a sovereign act of self-determination." (Emphasis added.)[4]

The complexity and sensitivity of the issue in this case results from the fact that the Covenant provides for the Northern Marianas to choose whether or not to use the federal court system as part of its judicial process, all of its judicial process, or none at all.

In the beginning the Northern Marianas set up its Trial Court and gave it limited original jurisdiction.[5] It gave the District Court original jurisdiction in all other Commonwealth cases. In 1983, it expanded the original jurisdiction of the Trial Court to include all civil and criminal matters arising under the laws of the Northern Marianas. Former 1 CMC § 3102. It retained the Appellate Division of the District Court as its appellate court under

---

[4] The Covenant was approved by the Northern Marianas on June 17, 1975, and by the United States on March 24, 1976.

[5] Up to $5,000 in civil cases, and five years or $5,000 sentence in criminal cases.

41

former 1 CMC § 3301 until the enactment of P.L. 6-25. By opting to use the federal court in combination with its own local court, as its judicial system, the Northern Marianas activated two (2) separate provisions of the Covenant.

The first provision is Section 203(d), Article II, which provides that:

> The judicial power of the Northern Mariana Islands will be vested in such courts as the Constitution or laws of the Northern Mariana Islands may provide.

This is one of the provisions which may not be amended without the mutual consent of both parties to the Covenant. Covenant, § 105. Any activity or enactment under Section 203(d) of the Covenant is exclusively within the authority of the Northern Marianas. Section 203(d) is the basis for Article IV of the CNMI Constitution which provides for its local judicial branch. And Article IV of the Constitution in turn is the basis for the Commonwealth statutory laws setting up the Commonwealth Superior Court and this Court.

The second provision in the Covenant relating to the judicial branch of the Commonwealth and which is particularly relevant to this case is Article IV. Section 401 thereof provides that:

> The United States will establish for and within the Northern Mariana Islands a court of record to be known as the 'District Court for the Northern Mariana Islands'.

> Section 402(c) provides that:

> The District Court will have such appellate jurisdiction as the Constitution or laws of the Northern Mariana Islands may provide. (Emphases added.)

42

Section 401 is not a self-executing provision and thus requires an act of the U.S. Congress (hereinafter "Congress") to establish the District Court for the Northern Mariana Islands.

The role of the United States, i.e. Congress, under Sections 401 and 402(c) of the Covenant is to set up the District Court and to empower it to receive local, original, and appellate jurisdictions as may be _provided_ by the Constitution or laws of the Northern Marianas and nothing more. The role of the Northern Marianas under Section 402(c) is to _provide_ or thereafter _eliminate_ appellate jurisdiction of the District Court in Commonwealth cases as it chooses to do so. Without such provision extended by the Northern Marianas, the Appellate Division will not have any jurisdiction over Commonwealth cases. Were Congress to actually provide the Appellate Division with appellate jurisdiction over Commonwealth cases, that would be, as we see it, contrary to the Covenant.

Likewise, the Northern Marianas may only provide or eliminate appellate jurisdiction of the District Court. It cannot establish the District Court or empower it to receive appellate jurisdiction from the Legislature.

The authority of the Legislature under Sections 401 and 402(c) of the Covenant are carefully explained in the _Analysis of the Covenant_ which states in relevant parts as follows:

> It is left _completely_ _up_ to the _local_ _legislature_ whether or not to permit the federal court to hear these cases, and the _local_ _legislature_, in accordance with the local

43

Constitution, will be able to _transfer_ jurisdiction from the federal court to the local courts whenever appropriate. ... As the Northern Marianas grow [sic] in population and as resources are available to fund local courts, it can be anticipated that jurisdiction over local matters will be _transferred_ from the federal court to the local courts. (Emphases added.)

Covenant Analysis, pp. 34 and 35.

The Analysis, addressing specifically Section 402(c) of the Covenant states as follows:

This section permits the _local legislature_ or the local Constitution to _vest_ in the District Court jurisdiction to review decisions made in, for example, the trial courts of the Northern Marianas. ...it should be noted that the negotiating parties clearly understood that this subsection (c) places no obligation on the Legislature of the Northern Marianas to grant any appellate jurisdiction to the District Court for the Northern Marianas. The _Legislature may choose_ at _any time_ and _from time to time_ to establish appellate courts of the Northern Marianas and to _eliminate_ the _appellate jurisdiction_ of the District Court. (Emphases added.)

Covenant Analysis, pp. 35 and 36.

The U.S. statute which empowers the District Court to receive appellate jurisdiction from the Northern Marianas (48 USC § 1694b(a)) provides that such appellate jurisdiction shall end when the Northern Marianas appellate court is established. It states, "_Prior to_ the establishment of an appellate court for the Northern Mariana Islands, the District Court shall have appellate jurisdiction ... as the Constitution and laws of the Northern Mariana Islands provide...." (Emphasis added.) Naturally, if such appellate jurisdiction can exist only _prior to_ the establishment of the Northern

44

Marianas appellate court, then immediately upon the establishment of such court, the appellate jurisdiction of the District Court ends, by operation of the U.S. law which empowered it to receive jurisdiction. The statute does not distinguish between _future_ appeals and _pending_ appeals. Therefore, Congress, realizing its role under Section 402(c) of the Covenant, set up the District Court so that its appellate jurisdiction, in either future or pending Commonwealth appeals, would cease upon the establishment of a Northern Marianas appellate court.

### COMMONWEALTH CASES PENDING IN THE APPELLATE DIVISION

In order to reach the jurisdictional issue presented to us, we need to first determine whether the Northern Marianas, under the Covenant, can create its own appellate court[6] and vest in that court appellate jurisdiction over Commonwealth cases pending before the Appellate Division.

The Northern Marianas has done precisely that in enacting Section 3109. The question is whether that enactment is valid.

In addressing this question, we ask whether Section 3109 should have been enacted by Congress under its Covenant authority and duty to establish the District Court and empower it to receive appellate jurisdiction from the Northern

---

[6] Authority to create the Northern Marianas Supreme Court is provided for in Section 203(d) of the Covenant.

45

Marianas. If so, then Section 3109 should be stricken down as contrary to the Covenant. If not, then we ask the next question, whether the enactment of Section 3109 by the Northern Marianas is proper under its Covenant authority to provide or eliminate appellate jurisdiction of the District Court.

After analyzing the Covenant, we conclude that the Northern Marianas properly enacted Section 3109. It did not set up the District Court or empower it to receive appellate jurisdiction from the Northern Marianas. All it has done is eliminate the appellate jurisdiction of the District Court in all Commonwealth cases, whether pending or future.

Clearly, under the Covenant, only the Northern Marianas may enact a law eliminating the appellate jurisdiction of the District Court in Commonwealth cases as set forth in Section 3109. Therefore, we conclude that Section 3109 has effectively eliminated the appellate jurisdiction of the District Court in all Commonwealth cases, whether pending or future.

### COMMONWEALTH CASES PENDING IN THE NINTH CIRCUIT

We now reach the issue of whether the Northern Marianas can vest appellate jurisdiction in this Court over Commonwealth cases pending before the Ninth Circuit. As stated earlier, this is a matter that involves the relations between the Northern Marianas and the United States, and therefore, governed by the Covenant.

46

At the outset, we note that the Ninth Circuit is a federal appellate court intended to address federal cases. It functions as a second appellate level for Commonwealth cases because of Article IV of the Covenant, and because of its regular jurisdiction to hear appeals from a federal district court. While the Covenant does not specifically mention the Ninth Circuit with respect to appellate jurisdiction in Commonwealth cases, and does not expressly delegate to Congress the authority to designate the Ninth Circuit as an appellate court in Commonwealth cases, the Ninth Circuit has previously held that Article IV of the Covenant permits such Congressional enactment. Camacho v. Civil Service Commission, 666 F.2d 1257, 1260 (9th Cir. 1982).

Both Wabol and Villacrusis agree that after the establishment of this Court, the Ninth Circuit has no further appellate jurisdiction on any Commonwealth case. They do not dispute that the Northern Marianas can eliminate the appellate jurisdiction of the Ninth Circuit over future Commonwealth cases. This case originated in the Commonwealth and is a Commonwealth case, raising the issue of whether a lease agreement violated the Northern Marianas Constitution.

Villacrusis' sole contention is that 48 USC § 1694b(c) prohibits the Northern Marianas from vesting appellate jurisdiction in this Court over Commonwealth cases pending in the Ninth Circuit. That is, once such case reaches the Ninth Circuit, it is beyond the reach of the Northern Marianas.

47

In examining the Covenant we have not found any specific language which only allows the Northern Marianas to eliminate appellate jurisdiction over _future_ appeals, but not over _pending_ appeals. We, therefore, turn to 48 USC § 1694b(c) to determine whether such federal statute expressly or impliedly provides that once a Commonwealth case reaches the Ninth Circuit it has to remain there until finally decided. Section 1694b(c) states: "The United States Court of Appeals for the Ninth Circuit shall have jurisdiction of appeals from all final decisions of the Appellate Division of the District Court." This statute makes the Ninth Circuit a higher appellate court for Commonwealth cases, and conforms with the regular appellate process within the federal court system. In other words, Congress, in addition to setting up the District Court and empowering it to receive appellate jurisdiction in Commonwealth cases, makes the Ninth Circuit, and virtually the whole circuit system, available to the Northern Marianas as the Commonwealth's provisional appellate courts under Article IV of the Covenant. Such statute does not appear inconsistent with the overall intent of the Covenant, i.e., to let the Northern Marianas use the federal courts as its provisional appellate courts.

However, since Section 1694b(c) does not have any language addressing the question of whether only _future_ and not _pending_ appellate jurisdiction of the Ninth Circuit, in Commonwealth cases, may be eliminated by the Northern Marianas, it is necessary to interpret its content and

determine its purpose within the context of Section 402(c) of the Covenant.

 Section 1694b(c) should be read and interpreted so as to be consistent with the Covenant and as one implementing the role of the United States and its obligation thereunder.[7] That obligation is to make the federal court system available to the Northern Marianas, as the latter's provisional appellate court in Commonwealth cases, until it establishes its own appellate court.

 To interpret the effect of Section 1694b(c) as contradicting or limiting the expressed right of the Northern Marianas to have access to the federal courts for appellate purposes as well as to be able to provide or eliminate jurisdiction therefrom, would mean a rewriting of the Covenant by Congress and this Court. The Northern Marianas and the United States entered into the Covenant with the intention to effectuate it. Further, all acts of Congress and the Legislature, relevant to the Covenant, should be interpreted with a view towards consistency with the Covenant, unless the contrary is clear.[8]

Thus, when the Covenant provides that the Northern Marianas may provide or eliminate appellate jurisdiction in

---

[7] See e.g., Temengil v. Trust Territory of the Pacific Islands, 1 CR 417, 481 (1983), citing Whitney v. Robertson, 124 U.S. 190, 194 (1888); and U.S. v. Vetco, 691 F.2d 1281, 1286 (9th Cir. 1981); (reversed on other grounds) Slip Op. Nos. 88-1548; 88-1639; 88-1675 (9th Cir. 1989).

[8] See Island Aviation, Inc. v. Mariana Islands Airport Authority, 1 CR 353 (1983).

the federal court system, any implementing Congressional enactment related thereto should be harmonized with that Covenant provision. In other words, Section 1694b(c) should be interpreted not to repeal the rights of the Northern Marianas under the Covenant, but rather to implement it.

Both parties agreed, at oral argument, that the purpose of 48 USC 1694b(c) is to implement the duties of the United States under Article IV of the Covenant. Thus, we do not see how 1 CMC § 3109 conflicts with any expressed or implied intent of 48 USC 1964b(c). Section 1694b(c) makes the Ninth Circuit available for provisional use as an appellate court for the Northern Marianas under the Covenant, and Section 3109 terminates such provisional use which is also in accordance with the Covenant.

█ We find nothing in the Covenant or 48 USC 1964b(c) that expressly or impliedly limits the authority of the Northern Marianas to eliminate federal appellate jurisdiction in any Commonwealth case, whether pending or future.

Villacrusis argues that once a Commonwealth case reaches the Ninth Circuit by virtue of § 1694b(c), the case falls outside the reach of the Northern Marianas.

██ While we agree that Ninth Circuit jurisdiction emanates from 48 USC 1694b(c), our analysis should not end there. The purpose of § 1694b(c), within the context of Article IV of the Covenant, is to provide that Commonwealth cases, once appealed to the Appellate Division, will continue on in the normal appellate process within the federal court system. In that

50

connection, a Commonwealth case remains the same case and has the same character. It does not matter that it has gone to the District Court, Appellate Division, the Ninth Circuit, or even the U.S. Supreme Court. It is still a Commonwealth case and can be reached by the Commonwealth. To use the language of the U.S. Court of Appeals for the District of Columbia:

> An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below; it is a proceeding in the original cause, and as such is but a step toward the final adjudication of the original cause, which the law allows quite as much as its [sic] allows a defense in the first instance. Thus, the suit is pending until the appeal is disposed of, and until disposition any judgement appealed from it is still sub judice.

> de Rodulfa v. United States, 461 F.2d 1240 (1972).

Further borrowing language from the U.S. Supreme Court: "To maintain a suit is to uphold, continue on foot and keep from collapse the suit already begun." Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23 (1927). And further, "Of course it does not matter that these cases had gone to a higher court." Id., at 24 (citation omitted).

The basis of the Ninth Circuit jurisdiction in Commonwealth cases derives from the appellate jurisdiction of the District Court. A Commonwealth case would not have reached the Ninth Circuit from the then Commonwealth Trial Court, unless it had gone through the Appellate Division. And as long as a case is still pending on appeal, the repeal of the jurisdiction of a lower court, will cut off the jurisdiction of a higher court. Thus, when the flow of appellate juris-

51

diction is cut off at the District Court, with express elimination of appellate jurisdiction in pending appeals, all cases appealed from that Court fall with the law. See Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952); and Smallwood v. Gallardo, supra.

If the Northern Marianas could terminate the appellate jurisdiction of the Ninth Circuit as to future appeals pursuant to Article IV of the Covenant, then logically and naturally under the same Covenant provision, it could terminate such appellate jurisdiction over pending appeals. It has such authority because, first, it does not make any difference that a case is on appeal -- the case remains the same. Second, the jurisdiction of the Ninth Circuit derives from the appellate jurisdiction of the District Court, whose jurisdiction stems from the Covenant. Third, the Covenant authorizes the Northern Marianas to eliminate federal appellate jurisdiction over Commonwealth cases, without limiting such authority to only future appeals, and not pending appeals. Fourth, we interpret 48 USC 1694b(c) as not repealing the authority of the Northern Marianas, but rather as implementing the U.S. obligation to make the federal courts available for provisional use by the Northern Marianas as its appellate tribunal until it establishes its own appellate court.

Based on the above analysis, we conclude that the Northern Marianas may vest in this Court appellate jurisdiction over Commonwealth cases which were pending before the

Ninth Circuit on May 2, 1989.

▮This abrupt elimination of federal appellate jurisdiction may appear to be harsh. However, we have no basis for questioning the wisdom of an enactment which is well within the province of the Legislature under the Covenant.

### ORDER

IT IS HEREBY ORDERED that this Court has jurisdiction in this matter and that Wabol's motion to assume jurisdiction in this case is hereby GRANTED.

Entered this __11th__ day of __December__, 1989.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice