KAYANAUGH, Circuit Judge,
concurring.
Plaintiffs argue that the amended Migratory Bird Treaty Act is ambiguous, and they rely on the canon against construing an ambiguous statute to abrogate a treaty. The Court concludes that the statute is plain and that the canon therefore does not apply. I add this concurrence because, even assuming the statute is ambiguous, the canon should not apply in cases involving non-self-executing treaties such as the migratory bird conventions.
1. The Supreme Court has stated that a self-executing treaty is one that “operates of itself without the aid of any legislative provision,” whereas a non-self-executing treaty “addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the Court.” Foster v. Neilson, 27 U.S. (2 Pet.) 253, 314, 7 L.Ed. 415 (1829) (Marshall, C.J.); see also Chae Chan Ping v. United States, 130 U.S. 581, 600, 9 S.Ct. 623, 32 L.Ed. 1068 (1889); Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888); Head Money Cases, 112 U.S. 580, 598-99, 5 S.Ct. 247, 28 L.Ed. 798 (1884). Like statutes, self-executing treaties automatically become part of domestic American law. By contrast, non-self-executing treaties have no effect or force as a matter of domestic law (though Congress may choose to incorporate parts of non-self-executing treaties into domestic law by enacting implementing statutes). See Whitney, 124 U.S. at 194, 8 S.Ct. 456 (“When the stipulations [of a treaty] are not self-executing, they can only be enforced pursuant to legislation to carry them into effect, and such legislation is as much subject to modification and repeal by congress as legislation upon any other subject.”); see also 1 Restatement (THIRD) OF THE FOREIGN RELATIONS LAW OF the United States § 111 cmt. h (1987) (“[S]trictly, it is the implementing legislation, rather than the agreement itself, that is given effect as law in the United States. That is true even when a non-self-executing agreement is ‘enacted’ by, or incorporated in, implementing legislation.”).
*880 The canon against interpreting ambiguous statutes to abrogate treaties applies with respect to self-executing treaties, which have the force of American law. See Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); Cook v. United States, 288 U.S. 102, 119-20, 53 S.Ct. 305, 77 L.Ed. 641 (1933). The canon is quite similar to the familiar doctrine against implied repeal of statutes — under which courts will not interpret an ambiguous statute to repeal a prior statute. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 141-42, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001); see also S. African Airways v. Dole, 817 F.2d 119, 126 (D.C.Cir.1987) (noting that Supreme Court has “compared the abrogation of a treaty through an act of Congress to the repeal of one statute by another ... [because] ‘the rule is well settled that repeals by implication are not favored ....’” (quoting Chew Heong v. United States, 112 U.S. 536, 549, 5 S.Ct. 255, 28 L.Ed. 770 (1884))).
There is little authority squarely analyzing whether those interpretive principles should extend to non-self-executing treaties, which have no force as a matter of domestic law. Courts have reason to be cautious about taking that step, however. When the Legislative and Executive Branches have chosen not to incorporate certain provisions of a non-self-executing treaty into domestic law, we must assume that they acted intentionally. Given such a deliberate decision by the Legislative and Executive Branches, basic principles of judicial restraint counsel courts to refrain from bringing the non-self-executing treaty into domestic law through the back door (by using the treaty to resolve questions of American law). In other words, because non-self-executing treaties have no legal status in American courts, there seems to be little justification for a court to put a thumb on the scale in favor of a non-self-executing treaty when interpreting a statute. Doing so would not reflect the appropriate judicial deference to the Legislative and Executive Branches in determining if, when, and how to incorporate treaty obligations into domestic law.
Concluding that the canon does not apply with respect to non-self-executing treaties “in no way disparages the importance” of treaty obligations. Sanchez-Llamas v. Oregon, — U.S. -, 126 S.Ct. 2669, 2687, 165 L.Ed.2d 557 (2006). Rather, it respects the proper limits and role of the Judiciary in relation to the Legislative and Executive Branches. See 1 RestatemeNt (Third) of the Foreign RelationS Law of the United ' States § 111(3) (1987) (“Courts in the United States are bound to give effect to international law and to international agreements of the United States, except that a ‘non-self-executing’ agreement will not be given effect as law in the absence of necessary implementation.”).
To be sure, the canon has been referenced in passing in some eases that may involve non-self-executing treaties. And some have expressly concluded that the canon should apply even with respect to non-self-executing treaties. See Ma v. Ashcroft, 257 F.3d 1095, 1114 (9th Cir.2001); see also David Cole, The Idea of Humanity: Human Rights and Immigrants’ Rights, 37 Colum. Hum. Rts. L. Rev. 627, 647 (2006). But that conclusion is questionable in light of the principles of judicial restraint outlined above (even if one were to accept a more limited proposition that non-self-executing treaties may warrant “respectful consideration” in interpreting certain statutes, cf. Sanchez-Llamas, 126 S.Ct. at 2685).
2. If the canon against abrogation does not apply with respect to non-self-executing treaties, plaintiffs’ reliance on the canon in this case necessarily rests on an *881 assumption that the migratory bird conventions are self-executing. The migratory bird conventions, however, are non-self-executing.
Courts generally hold a treaty is non-self-executing when one of the following conditions applies:
• the treaty itself contemplates implementing legislation, see Foster, 27 U.S. at 314; Diggs v. Richardson, 555 F.2d 848, 851 (D.C.Cir.1976); see also Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 376 (7th Cir.1985); Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1298-99 (3d Cir.1979); United States v. Postal, 589 F.2d 862, 876-77 (5th Cir.1979);
• the treaty provides no private right of action, see Head Money Cases, 112 U.S. at 598-99, 5 S.Ct. 247; Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442-43, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989); Comm. of U.S. Citizens Living in Nicaragua v. Reagan, 859 F.2d 929, 938 (D.C.Cir.1988); Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 808 (D.C.Cir.1984) (Bork, J., concurring); see also Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 968 (4th Cir.1992);
• the Executive Branch or Senate indicates during the treaty-making or treaty-ratifying process, for example, that the treaty is non-self-executing, see Sosa v. Alvarez-Machain, 542 U.S. 692, 728, 735, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004); see also Renkel v. United States, 456 F.3d 640, 644 (6th Cir.2006); Frolova, 761 F.2d at 376;
• the treaty provisions are precatory, aspirational, or otherwise too vague to be judicially enforceable, see INS v. Stevic, 467 U.S. 407, 428 n. 22, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); Diggs, 555 F.2d at 851; see also Frolova, 761 F.2d at 374; or
• the treaty imposes substantive obligations that would contravene a provision of the Constitution, see Reid v. Covert, 354 U.S. 1, 16, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion).
In recent years, courts have hesitated to find a treaty self-executing — perhaps because the practical effect of finding a treaty self-executing is to eliminate the House of Representatives from the law-making process, even for laws that may have significant domestic impact. Cf. U.S. Const. art. I, § 1 (“All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.”); Akhil Reed AjmaR, AmeRioa’s Constitution: A BiogRapht 304 (2005) (“The general intuition behind this doctrine [of non-self-execution] is that some things cannot be done domestically unless the people’s House concurs.”); Jack L. Goldsmith, The New Formalism in United States Foreign Relations Law, 70 U. Colo. L. Rev. 1395, 1429 & n. 126 (1999) (“In recent years courts” have adopted approach that “presumes that a treaty is non-self-executing.”); cf. also United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir.2001) (“[C]ourts presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them.”); Garza v. Lappin, 253 F.3d 918, 924 (7th Cir.2001) (“[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts.”).
Applying the settled precedents and principles for determining the status of treaties, the migratory bird conventions plainly are non-self-executing. First, the text of the migratory bird conventions contemplates implementing legislation. See Convention for the Protection of Migratory Birds, U.S.-Gr. Brit., art. VIII, Aug. 16, 1916, 39 Stat. 1702, 1704 (United States and Canada agreed “to take, or propose to *882 their respective appropriate law-making bodies, the necessary measures for insuring the execution of the present Convention.”); Convention for the Protection of Migratory Birds and Game Mammals, U.S.-Mex., art. II, Feb. 7, 1936, 50 Stat. 1311, 1312 (United States and Mexico agreed “to establish laws, regulations and provisions to satisfy the need” for migratory bird protection). Second, the Canada and Mexico conventions contain pledges to enact restrictions on hunting and killing migratory birds; they do not create any private right of action.
* * :|:
In sum, even if the amended Migratory Bird Treaty Act is ambiguous, the canon against interpreting an ambiguous statute to abrogate a treaty should not apply here because the migratory bird conventions are non-self-executing.