SENTELLE, Senior Circuit Judge,
dissenting:
The majority concedes that the statute at issue is capable of only one interpretation, yet it reaches a result that it concedes is inconsistent with that interpretation. Because we lack authority to rewrite Congress’s statutes, I respectfully dissent.
The Supremacy Clause of the Constitution provides that “[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land.” U.S. Const, art. VI, cl. 2. The rule of priority contained in the Supremacy Clause is straightforward: The Constitution trumps those statutes and treaties which are inconsistent with it. See, e.g., Marbury v. Madison, 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803); Reid v. Covert, 354 U.S. 1, 16-17, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). If statutes or treaties are inconsistent with other statutes or treaties, the last-in-time rule applies, and the most recent statute or treaty controls. See, e.g., Breard v. Greene, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (per curiam); Covert, 354 U.S. at 18, 77 S.Ct. 1222; Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888). Where a statute potentially conflicts with a prior treaty, “an ambiguous statute should be construed where fairly possible not to abrogate a treaty.” Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872, 878 (D.C.Cir.2006) (citing Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984)).
*240 With these fundamental precepts in mind, this case ought to be simple. In the 1990s, the executive branch made agreements with Mexico and Canada that exempted Mexican and Canadian commercial drivers from a Department of Transportation (“DOT”) regulation that all commercial drivers operating commercial vehicles in the United States must have a current medical certification. In 2005, Congress passed and the President signed a law requiring all commercial motor vehicle operators in the United States “to have a current valid medical certificate” “issued by persons on” a newly-created “national registry of medical examiners.” 49 U.S.C. § 31149(c)(1)(B), (d)(3).
Under the statute, then, all commercial drivers, including Mexican and Canadian drivers, need a medical certificate issued by an examiner on the national registry to operate commercial motor vehicles in the United States. But the DOT’s promulgated rule, relying on the prior agreements, exempts Mexican and Canadian drivers from this statutory requirement.
Because the statute is last-in-time and clearly inconsistent with the earlier international agreements, the statute governs. The DOT rule at issue here would permit Mexican and Canadian drivers to operate commercial vehicles in the United States without following the statutory requirements of § 31149. It is therefore our obligation to grant the petition for review and vacate this unlawful rule.
The majority concedes that the statute is unambiguously inconsistent with the pri- or international agreements. The majority expresses worry about congressional intent, but given that Congress has passed statutory text that the majority concedes is inconsistent with the prior agreements, Congress’s intent is no great mystery. Its statute contradicts the prior rule. That should be the end of the matter, for “courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). But the majority goes on to justify elevating the prior agreements above the statutory text by manufacturing a heightened clear statement requirement not found in the Constitution, the Supreme Court’s precedents, or this court’s precedents.
First, the Constitution: “Distorting statutory language simply to avoid conflicts with treaties would elevate treaties above statutes in contravention of the Constitution.” Fund for Animals, 472 F.3d at 879. Yet the court’s decision today goes beyond distorting statutory language and abrogates it altogether. The court concedes that there is no other plausible interpretation of the statute, but then it goes on to hold that Congress must use some additional magic words to give the admittedly clear statute effect.
It has long been understood that the Supremacy Clause places treaties and statutes on equal footing, which is why courts have always evaluated conflicts between treaties and statutes using the last-in-time rule. The court’s holding today elevates treaties above statutes by making it more difficult for Congress to abrogate prior treaties than prior statutes. The political branches can overrule a prior statute by enacting a new statute inconsistent with the old one. See, e.g., Nat’l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 662-63, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007); Posadas v. Nat’l City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936). Both the Supreme Court and this court have explained that this rule should apply identically to conflicts between a statute and a treaty. See Chew Heong v. United States, 112 U.S. 536, 549-50, 5 S.Ct. 255, 28 L.Ed. 770 (1884); S. African Airways v. Dole, 817 F.2d 119, 126 (D.C.Cir.1987). Thus, the Supreme Court *241 has explained: “The Constitution gives [a treaty] no superiority over an act of Congress in this respect, which may be repealed or modified by an act of a later date.” The Head Money Cases, 112 U.S. 580, 599, 5 S.Ct. 247, 28 L.Ed. 798 (1884). The court today requires the political branches to do more to overrule prior treaties and international agreements than they would need to do to overrule prior statutes. There is no warrant in the Supremacy Clause for this result.
This result is especially troubling because the Supremacy Clause does not expressly encompass international agreements of the type at issue here. It is undisputed that the agreements before us were not entered pursuant to the Constitution’s Treaty Clause. See U.S. Const, art. II, § 2, cl. 2 (giving the President “Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur”). Nor are they “Laws of the United States” enacted through bicameralism and presentment. See id. art. I, § 7, cl. 2. See generally Bradford R. Clark, Separation of Powers as a Safeguard of Federalism, 79 Tex. L.Rev. 1821, 1334-36 (2001). The Mexican agreement was made between the U.S. Secretary of Transportation and the Mexican Secretary of Communications and Transportation, while the Canadian “agreement” was contained in letters exchanged between two transportation bureaucrats in the United States and Canada. If “[distorting statutory language simply to avoid conflicts with treaties would elevate treaties above statutes in contravention of the Constitution,” Fund for Animals, 472 F.3d at 879, distorting statutory language to avoid conflicts with international agreements even more obviously contravenes the Constitution.
It is now harder for Congress to overrule two letters exchanged between mid-level administrative functionaries than it would be for Congress to overrule a statute passed by a majority of the people’s representatives and signed by the President. Nothing in the Constitution justifies transferring the people’s right to govern themselves to Transport Canada’s Director General of Road Safety and Motor Vehicle Regulation and an Associate Administrator in the U.S. Department of Transportation’s Federal Highway Administration Office of Motor Carriers. Ours is a government of laws, not of bureaucrats.
Second, the Supreme Court’s precedents: The majority does not dispute that no Supreme Court decisions require a clear statement rule. In all the Supreme Court cases relied upon by the majority in which the Court found no abrogation, the Court held that the relevant statutory text was ambiguous. For instance, in Trans World Airlines, there was no direct conflict between the treaty and the statute, so the Court refused to find abrogation given that the statute did not speak to the question at issue. 466 U.S. at 252, 104 S.Ct. 1776. Cook v. United States emphasized that prior practice under the treaty could resolve only “doubt as to the construction of the” statute. 288 U.S. 102, 120, 53 S.Ct. 305, 77 L.Ed. 641 (1933) (emphasis added). Weinberger v. Rossi found no abrogation because the crucial word at issue was ambiguous. 456 U.S. 25, 29-36, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982).
By contrast, the statute in this case is “textually unambiguous,” as the majority concedes. Maj. Op, at 234. The Supreme Court has spelled out our role in such circumstances: “When the words of a statute are unambiguous, ... th[e] first canon[, that a legislature says in a statute what it means and means in a statute what it says there] is also the last: judicial inquiry is complete.” Germain, 503 U.S. at 253-54, 112 S.Ct. 1146 (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)) (internal quo *242 tation marks omitted). The Supreme Court long ago made clear that “when a law is clear in its provisions, its validity cannot be assailed before the courts for want of conformity to stipulations of a previous treaty not already executed.” Whitney, 124 U.S. at 195, 8 S.Ct. 456. A treaty “‘made by the United States with any foreign nation ... is subject to such acts as Congress may pass for its enforcement, modification, or repeal.’ ” Id. (quoting Head Money Cases, 112 U.S. at 599, 5 S.Ct. 247). Because we are governed by Supreme Court precedents, and the text, of the statute is clear, I would go no further.
Third, this court’s precedents: The court’s new clear statement rule contradicts our own precedents. Never have we refused to find abrogation of a prior agreement where a later statute was clearly inconsistent with the agreement. In fact, as discussed, we have explicitly held that we do not “distort the plain meaning of a statute in an attempt to make it consistent with a prior treaty.” Fund for Animals, 472 F.3d at 879 (emphasis omitted).
Before today, our circuit’s law was that where we have an “unambiguous statutory mandate,” the ■ prior international agreement must give way. Dole, 817 F.2d at 125 n. 2; see Fund for Animals, 472 F.3d at 879. Quoting the Supreme Court, we have called it “wholly immaterial to inquire” whether Congress departed from the prior agreement “by accident or design.” Dole, 817 F.2d at 126 (quoting Whitney, 124 U.S. at 195, 8 S.Ct. 456) (emphasis omitted). Yet the majority uses the international agreements as the governing rule even while acknowledging that the later statute is unambiguous simply because it is unsure whether Congress and the President really meant to abrogate the agreement. See Maj. Op. at 236-37. In doing so, the majority departs from our precedents and fashions an inquiry into congressional and presidential motives.
As we recently recalled, a statutory canon of interpretation serves merely as “an interpretive aid, not an invitation to rewrite statutes.” Ass’n of Am. R.Rs. v. Dep’t of Transp., No. 12-5204, 721 F.3d 666, 674 n. 17, 2013 WL 3305715, at *6 n. 7 ’(D.C.Cir. July 2, 2013). Accordingly, we have applied the canon against abrogation of a prior agreement only where the later statute was ambiguous in relevant respects, and we have always emphasized the statute’s ambiguity. See, e.g., Roeder v. Islamic Republic of Iran, 333 F.3d 228, 238 (D.C.Cir.2003) (emphasizing that “the legislation itself is silent” on the precise point of conflict between the statute and the prior agreement); Roeder v. Islamic Republic of Iran, 646 F.3d 56, 61 (D.C.Cir.2011) (“An ambiguous statute cannot supercede an international agreement if an alternative reading is fairly possible.” (emphasis added)). The majority concedes that the statute here is unambiguous. Therefore, the cases on which it relies are all distinguishable. “The language of the statute is entirely clear, and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it.” Conroy v. Aniskoff, 507 U.S. 511, 528, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring in the judgment).
Of course, it appears that nothing in the statute would prohibit the DOT from adding Mexican or Canadian doctors to the new national registry. Further, the United States could choose to enter into new agreements with Mexico or Canada that would address these issues.
The court’s opinion today departs from the precedents of the Supreme Court and this circuit, and is not founded in the Constitution. I respectfully dissent.