Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 21, 2003        Decided August 8, 2003

No. 02-1145

TOM KAPPUS AND LOUISE KAPPUS,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

Appeal from the United States Tax Court
(No. IRS–16512–99)

*Lawrence P. Postol* argued the cause and filed the briefs for appellants.

*Frank P. Cihlar*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Robert J. Branman*, Attorney. *John A. Nolet*, Attorney, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Tom and Louise Kappus, United States citizens living in Canada, appeal from a decision of the United States Tax Court denying their challenge to a notice of deficiency in their federal income tax issued by the Commissioner of Internal Revenue. The Kappuses claimed a credit against their U.S. tax for all of the taxes they paid to Canada on their Canadian-source income, leaving them with no U.S. tax liability. The Commissioner argues that section 59(a)(2) of the Internal Revenue Code, 26 U.S.C. § 59(a)(2), limits the allowable foreign tax credit to 90% of a taxpayer's alternative minimum tax liability. The Kappuses counter that this section violates the terms of a tax treaty between the United States and Canada. We conclude that, even if the appellants are correct that the treaty and statute are in conflict, the statute must prevail under the "last-in-time" rule. We therefore affirm the judgment of the Tax Court.

## I

The parties have stipulated to the relevant facts. Tom and Louise Kappus are United States citizens who resided and worked in Canada during 1997. On their 1997 joint federal income tax return, they reported taxable income of $244,211 and a "regular" income tax liability of $69,410. They then reduced that liability to zero by applying a foreign tax credit of $69,410 based on their payment of Canadian income taxes. *See* 26 U.S.C. §§ 27(a), 901. In addition to the regular tax, the Kappuses were subject to the alternative minimum tax (AMT) imposed by 26 U.S.C. § 55(a).[1] They reported a pre-

_____

[1] The AMT is "intended to prevent a taxpayer with substantial income from avoiding significant tax liability through the use of exemptions, deductions, and credits." *Pekar v. Comm'r of Internal Revenue*, 113 T.C. 158, 160 (1999). "[T]he 'alternative minimum tax' provision requires the recalculation of a taxpayer's income under a different set of rules. A tax is then imposed [on that income] at a graduated rate . . . ." *United States v. Hill*, 506 U.S.

credit tentative minimum tax of $61,556. However, they claimed an AMT foreign tax credit of $61,556, *see id.* §§ 55(b)(1), 59(a)(1), reducing their alternative minimum tax to zero as well. The Kappuses attached a statement to their joint return in which they claimed that they were not subject to 26 U.S.C. § 59(a)(2), which provides that the AMT foreign tax credit may not exceed 90% of a taxpayer's pre-credit tentative minimum tax. They claimed that exemption on the basis of a tax treaty between the United States and Canada. *See* Convention Between Canada and the United States of America with Respect to Taxes on Income and on Capital, Sept. 26, 1980, U.S.-Can., T.I.A.S. No. 11,087 [hereinafter "U.S.-Canada Tax Treaty" or "Treaty"].

On May 28, 1999, the Commissioner sent the Kappuses a notice of deficiency in their 1997 tax, stating that they should have paid $6,152. That amount was equal to 10% of their pre-credit tentative minimum tax as recalculated by the Commissioner,[2] who applied § 59(a)(2)'s 90% cap on the AMT foreign tax credit. The Kappuses filed a petition with the Tax Court contesting the Commissioner's determination. They argued that § 59(a)(2) was in direct conflict with the U.S.-Canada Tax Treaty, and that in such a circumstance the most recent provision must govern under the last-in-time rule. Although the Treaty went into effect in 1984, two years before the enactment of § 59(a)(2), the Kappuses contended that protocols (amendments) to the Treaty ratified in 1995 and 1997 implicitly repealed § 59(a)(2) and represented the most recent relevant enactments. In response, the government argued that the Treaty and § 59(a)(2) were not in conflict, and that even if they were, § 59(a)(2) would prevail as the last in time because nothing in the subsequent protocols conflicted with the statute. The parties stipulated that, if

546, 551 n.3 (1993) (citing 26 U.S.C. § 55). In this case, the parties agree that the Kappuses' regular tax was zero and that the AMT was the only tax owed.

[2] The Commissioner determined that the Kappuses' pre-credit tentative minimum tax was $61,519, slightly less than the $61,556 reported by the appellants.

the legal questions were decided in the Commissioner's favor, the Kappuses' 1997 tax deficiency would amount to $6,152.

On February 13, 2002, the Tax Court issued a final decision in favor of the Commissioner, holding the Kappuses liable for income tax in the amount of $6,152. The Kappuses now appeal to this court. We review the Tax Court's judgment de novo because it rests solely on a determination of law. *See Flynn v. Comm'r of Internal Revenue*, 269 F.3d 1064, 1068 (D.C. Cir. 2001).[3]

## II

All American citizens are subject to U.S. taxes, regardless of where they live or earn their income. *See* 26 C.F.R. § 1.1-1(b); *see also Cook v. Tait*, 265 U.S. 47, 56 (1924). Citizens living and working abroad must therefore report their foreign-source income to the Internal Revenue Service. Taxes on such income, however, may often be offset under U.S. law by credits for taxes paid to foreign governments, and are also subject to limitations imposed by bilateral tax conventions, such as the U.S.-Canada Tax Treaty.

Article XXIV of that treaty, entitled "Elimination of Double Taxation," reads in relevant part:

---

[3] In ruling for the Commissioner, the Tax Court did not rely on any of the grounds pressed by the parties. Instead, the court ruled that certain language in one of the protocols to the Treaty expressed the intent of the contracting states to accept amendments to the Internal Revenue Code made in 1986, including § 59(a)(2). As a consequence, the court concluded that § 59(a)(2) was not in conflict with the Treaty and could properly be applied to the Kappuses. The appellants argue that the language relied on by the court, which added the words "of 1986" after "Internal Revenue Code" in Article II of the Treaty, did not have that consequence. Article II, they maintain, simply identifies the taxes that are subject to the Treaty; it is Article XXIV that governs the tax credits that each government must provide. The Commissioner does not defend the Tax Court's rationale here, and given our resolution of the case, we need not pass on it.

1. In the case of the United States, *subject to the provisions of paragraphs 4, 5, and 6*, double taxation shall be avoided as follows: In accordance with the provisions and <u>subject to the limitations of the law of the United States</u> (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States . . . as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada. . . .

   . . .

4. Where a United States citizen is a resident of Canada, the following rules shall apply:

   (a) Canada shall allow a deduction from the Canadian tax in respect of income tax paid or accrued to the United States in respect of profits, income or gains which arise . . . in the United States, except that such deduction need not exceed the amount of the tax that would be paid to the United States if the resident were not a United States citizen; and

   (b) for the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a). The credit so allowed shall not reduce that portion of the United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

U.S.-Canada Tax Treaty art. XXIV (italics and underlining added). The Kappuses contend that under paragraph 4(b), the United States is required to grant a credit for the entire amount of the Canadian tax that they paid on the income they earned in Canada while residing there.

The Commissioner counters that paragraph 1 of Article XXIV subjects the required credit to "the limitations of the law of the United States," and that the law applicable to the appellants' situation, 26 U.S.C. § 59(a)(2), caps their AMT foreign tax credit at 90% of their pre-credit tentative minimum tax liability. Section 59(a)(2) states, in relevant part:

(2)  Limitation to 90 percent of tax.—

  (A)  In general.—The alternative minimum tax foreign tax credit for any taxable year shall not exceed the excess (if any) of—

    (i) the pre-credit tentative minimum tax for the taxable year, over

    (ii) 10 percent of the amount which would be the pre-credit tentative minimum tax . . . .

26 U.S.C. § 59(a)(2).  The Kappuses agree that, but for the Treaty, this provision would have obligated them to pay an alternative minimum tax equal to 10% of their pre-credit tentative minimum tax liability, and they acknowledged as much in the statement they attached to their 1997 return.

Where a treaty and a statute "relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either." *Whitney v. Robertson*, 124 U.S. 190, 194 (1888); *see Xerox Corp. v. United States*, 41 F.3d 647, 658 (Fed. Cir. 1994).  The Kappuses contend that harmonization is not possible here because the Treaty flatly bars the application of § 59(a)(2).  As a consequence, they argue that the Treaty—as the provision that is the last in time—must govern.  *See infra* Part III.  The Commissioner contends that the two can be read in harmony, but that even if they cannot, it is the statute that is the last in time.

The parties' dispute over the meaning of the Treaty centers on Article XXIV.  According to the Commissioner's interpretation, the general obligation imposed by paragraph 1 of that article, that the United States allow its citizens a credit for income taxes paid to Canada, is "subject to the limitations of the law of the United States"—the phrase that we have underlined in the excerpt from the Treaty set out above.  And because § 59(a)(2) is just such a limitation, the Commissioner continues, the Treaty permits its application.  The Kappuses respond that the underlined proviso is itself "subject to the provisions of paragraphs 4, 5, and 6"—the phrase that we have italicized above—because that limitation precedes the underlined proviso and therefore modifies it.  And

paragraph 4(b), they continue, requires that U.S. citizens who reside in Canada be fully credited for their Canadian taxes. In reply, the Commissioner disagrees that the order of the phrases is controlling, but argues that even if it is, paragraph 4 does not bar the application of § 59(a)(2). In his view, that paragraph does not impose a substantive obligation on the United States to grant a tax credit, but rather "merely provides rules for determining the order in which deductions or credits for taxes paid to the other jurisdiction are to be applied when the same income is subject to tax by both." Appellee's Br. at 17–18.

The question of whether the Treaty and statute can be harmonized as the government suggests is an extremely close one. It is not, however, a question that we need resolve. The Kappuses concede that, even if their reading of the Treaty is correct and the Treaty and § 59(a)(2) are in irreconcilable conflict, the statute nonetheless would control their tax liability if it were the most recent relevant provision. Accordingly, because we conclude in Part III that the statute is in fact the last relevant provision, we need not further pursue the search for harmony. *See South African Airways v. Dole*, 817 F.2d 119, 125–26 (D.C. Cir. 1987) (assuming arguendo the existence of a conflict between a treaty and a statute, and resolving the case on the basis of the last-in-time principle); *Jamieson v. Comm'r of Internal Revenue*, 70 T.C.M. (CCH) 1372, 1373–74 (Tax Ct. 1995) (holding, in a case prior to the amending protocols, that § 59(a)(2) prevailed over the U.S.-Canada Tax Treaty under the last-in-time principle without determining whether they were in conflict), *aff'd*, 132 F.3d 1481 (D.C. Cir. 1997).

### III

When a statute conflicts with a treaty, the later of the two enactments prevails over the earlier under the last-in-time rule. The rule and its rationale were articulated by the Supreme Court in *Whitney v. Robertson*:

> By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of

legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other . . . . [I]f the two are inconsistent, the one last in date will control the other . . . . If the country with which the treaty is made is dissatisfied with the action of the legislative department, it may present its complaint to the executive head of the government, and take other measures as it may deem essential for the protection of its interests . . . . *The duty of the courts is to construe and give effect to the latest expression of the sovereign will*.

124 U.S. at 194–95 (emphasis added); *see Breard v. Greene*, 523 U.S. 371, 376 (1998) ("[A]n Act of Congress . . . is on a full parity with a treaty, and . . . when a statute which is subsequent in time is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null." (internal quotation marks omitted)). The question for us, therefore, is which of the two—the Treaty or the statute—is the "latest expression of the sovereign will." *Whitney*, 124 U.S. at 195.

At first glance, this is not a difficult question to answer. The Treaty was signed by the United States and Canada on September 26, 1980, and entered into force on August 16, 1984, when it—along with its first two protocols—was ratified by the U.S. Senate. Section 59(a)(2), on the other hand, did not go into effect until two years later, as part of the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085, 2336–37.

Although § 59(a)(2) did not specifically address the relationship between its requirements and those of applicable tax treaties, Congress clarified that relationship shortly thereafter. As part of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. No. 100-647, 102 Stat. 3342, Congress passed the following provision, now codified as 26 U.S.C. § 7852(d)(1):

(d) Treaty Obligations.—

(1) In general.—For purposes of determining the relationship between a provision of a treaty and any law of the United States affecting revenue, neither the treaty

> nor the law shall have preferential status by reason of its being a treaty or law.

The Senate report on TAMRA made clear that this provision was intended to codify the last-in-time principle as applied to tax treaties and statutes. *See* S. REP. NO. 100-445, at 316–28 (1988). And another section of TAMRA expressly stated that specified amendments made by the Tax Reform Act, including § 59(a)(2), were intended to apply notwithstanding any inconsistent treaty obligations:

> (2) Certain Amendments to Apply Notwithstanding Treaties.—The following amendments made by the [Tax] Reform Act [of 1986] shall apply notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act:
>
> . . .
>
> (B) The amendments made by title VII of the Reform Act [of which § 59(a)(2) was a part] to the extent such amendments relate to the alternative minimum tax foreign tax credit.

TAMRA, § 1012(aa)(2) (codified at 26 U.S.C. § 861 note); *see* S. REP. NO. 100-45, at 319. TAMRA thus made it crystal clear that Congress intended the 90% cap on the AMT foreign tax credit to supercede any preexisting treaty obligation with which it conflicted.

As the Kappuses conceded at oral argument, had the matter ended with TAMRA, § 59(a)(2) would plainly have prevailed over the Treaty. *Cf. Jamieson*, 70 T.C.M. at 1373–74 (holding that, as of the 1987 tax year, § 59(a)(2) superceded the U.S.-Canada Tax Treaty under the last-in-time principle). The appellants argue, however, that the ratification of two subsequent protocols to the Treaty in 1995 and 1997 had the effect of re-establishing the Treaty (as amended) as the latest expression of the sovereign will. *See* Protocol Amending the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital, Mar. 17, 1995, S. TREATY DOC. NO. 104-4 (1995) [hereinafter "Third Protocol"]; Protocol Amending the Convention Between the United States of America and Canada with Respect

to Taxes on Income and on Capital, July 29, 1997, S. TREATY DOC. NO. 105-29 (1997) [hereinafter "Fourth Protocol"].

The Third and Fourth Protocols, which consisted of amendments to specific provisions of the original treaty, did not address § 59(a)(2) at all. Nor did they amend paragraphs 1 or 4 of Article XXIV, the provisions at issue in this case. Nonetheless, the Kappuses argue that the protocols effectively supercede § 59(a)(2) because *any* protocol to an international convention, regardless of the protocol's content, implicitly reaffirms the signatories' commitment to the entire underlying treaty. Thus, the appellants contend that we should regard the entire U.S.-Canada Tax Treaty as having been re-adopted in full when the Third and Fourth Protocols were ratified, and that the re-adopted treaty trumps § 59(a)(2) under the last-in-time rule.[4]

This argument, which the appellants characterize as "the doctrine of implied repeal," Appellants' Br. at 33; *see* Reply Br. at 26, runs headlong into a contrary canon of construction: that "repeals by implication are not favored, and are never admitted where the former can stand with the new act."

---

[4] In their opening brief, the Kappuses did not contend that either protocol explicitly amended any relevant paragraph of the Treaty, instead relying solely on their theory of implied reaffirmation. Appellants' Br. at 39. In their reply brief, however, the appellants additionally relied on the Third Protocol's amendments to other paragraphs that they deemed "closely linked" to the relevant paragraphs, paragraphs 1 and 4. But the Kappuses did not explain how the amended provisions affected their tax liability, and because the argument was not raised until their reply brief, the Commissioner did not have an opportunity to offer his views on these issues. "Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) (citation omitted). Accordingly, "we generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief," and we will not diverge from that general rule today. *Id.* at 1210; *see City of Waukesha v. EPA*, 320 F.3d 228, 241 n.10 (D.C. Cir. 2003).

*South African Airways*, 817 F.2d at 126 (internal quotation marks omitted).[5]  In *Johnson v. Browne*, the Supreme Court expressly applied this canon to the interpretation of treaties: "[A] later treaty will not be regarded as repealing an earlier statute by implication, unless the two are absolutely incompatible and the statute cannot be enforced without antagonizing the treaty."  205 U.S. 309, 321 (1907) (citation omitted).[6]  In this case, the protocols plainly are not "absolutely incompatible" with § 59(a)(2) because their text neither bars its application nor modifies any treaty provision that bars it.  We therefore cannot read the protocols as implicitly reviving original treaty provisions that the Kappuses agree had, for purposes of U.S. law, been superceded by § 59(a)(2).[7]

Finding nothing in U.S. law to support their claim that the protocols implicitly repeal the intervening statute, the Kappuses insist that it is based on a well-settled principle of international law.  But they cite no such principle.  Instead, the appellants point to Article 40(5) of the Vienna Convention on the Law of Treaties, May 23, 1969, 1155 U.N.T.S. 331, which, they contend, stands for what they regard as an analogous proposition, namely "that a nation not previously a party to [a] treaty, but which ratifies a subsequent protocol,

[5]  *See Chew Heong v. United States*, 112 U.S. 536, 549 (1884) (holding that one statute will never be read to repeal another absent "positive repugnancy . . ., and even then the old law is repealed by implication only *pro tanto*, to the extent of the repugnancy" (internal quotation marks omitted)).

[6] *See Xerox Corp.*, 41 F.3d at 658 ("[T]acit abrogation of prior law will not be presumed and, unless it is impossible to do so, treaty and law must stand together in harmony.").

[7] The canon disfavoring repeals by implication may be viewed as a special application of the rule discussed in Part II—that statutes and treaties should be harmonized if possible.  *See Whitney*, 124 U.S. at 194; *Xerox Corp.*, 41 F.3d at 658.  The best way to harmonize § 59(a)(2) with the protocols is to assume that the latter were not intended to repeal the former.  That means reading the protocols as doing nothing more than amending the provisions of the original treaty that they specifically address.

automatically becomes ... a party to the entire treaty as amended by such protocol." Appellants' Br. at 36.[8]

There are a number of problems with this contention. First, the language of the Vienna Convention does not state the proposition put forward by the appellants: that a nation that ratifies a *protocol* becomes party to the original treaty. Rather, it states the converse: that a nation that ratifies the *original treaty* after a protocol has gone into effect is bound by the protocol as well as the treaty.[9] Second, Article 40 of the Convention applies only to multilateral treaties, not to bilateral treaties like the U.S.-Canada Tax Treaty. *Id.* art. 40(1). Finally, the proposition proffered by the appellants at

---

[8] The United States has signed but not ratified the Vienna Convention. *See* United Nations Treaty Collection, Multilateral Treaties Deposited With the Secretary-General, http://untreaty.un.org/english/bible/englishinternetbible/partI/chapter23/chapter23.asp.

[9] *See* Vienna Convention, art. 40(5) ("Any State which becomes a party to the treaty after the entry into force of the amending agreement shall, failing an expression of a different intention by that State: (a) be considered a party to the treaty as amended; and (b) be considered as a party to the unamended treaty in relation to any party to the treaty not bound by the amending agreement."). In the *Korean Air Lines Disaster* case, the court did hold that the Republic of Korea had in effect joined a treaty that it had never signed, the Warsaw Convention, by signing its Hague Protocol. *In re Korean Air Lines Disaster of September 1, 1983*, 664 F. Supp. 1463, 1469 (D.D.C. 1985), *opinion adopted*, 829 F.2d 1171, 1173 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). The court did not rely on the Vienna Convention or on general principles of international law, however, but rather on the history of the Hague Protocol and the language of its Article XXIII, which read: "Adherence to this Protocol by any State which is not a Party to the Convention shall have the effect of adherence to the Convention as amended by this Protocol." *Id.* The protocols at issue in the instant case do not contain such language, nor do their ratification histories indicate an intent to reaffirm the unamended provisions of the Treaty. *See, e.g.*, S. Exec. Rep. No. 104-19 (Aug. 10, 1995) (discussing the Third Protocol); S. Exec. Rep. No. 105-12 (Oct. 30, 1997) (discussing the Fourth Protocol).

best concerns the obligations of states that have joined a protocol without joining the underlying treaty. But it says nothing about the situation at issue here—where both states were parties to the original treaty, where a subsequent legislative enactment superceded a provision of that treaty, and where thereafter the same two parties entered into a protocol amending different provisions of the original treaty. Whatever merits the proffered proposition may have for situations that fall within its terms, it does not apply to this case, and it certainly cannot overcome the Supreme Court's instruction that "[r]epeals by implication are never favored." *Johnson*, 205 U.S. at 321.

We do not mean to suggest that a protocol may never effectively reenact an underlying treaty, but only that we may not construe one as implicitly doing so when the effect is to abrogate an intervening statute. Of course, in a particular case, the language and drafting history of a protocol may evidence the parties' intention to recommit themselves to their preexisting treaty obligations. But there is no such evidence here. Accordingly, because the latest expression of the United States' sovereign will on the subject of the Kappuses' foreign tax credit is 26 U.S.C. § 59(a)(2), that statute prevails over the Treaty, and we are obligated to enforce it.

## IV

We conclude that, to the extent they are in conflict, section 59(a)(2) of the Internal Revenue Code prevails over the provisions of the U.S.-Canada Tax Treaty. The judgment of the Tax Court upholding the Commissioner's notice of deficiency in the appellants' 1997 income tax is therefore

*Affirmed.*