# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted on the Briefs on March 13, 2006

Decided April 11, 2006

No. 05-1269

PETER M. HAVER,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

Appeal from the United States Tax Court
(No. IRS-15706-03)

*Peter M. Haver* was on the briefs for appellant.

*Frank P. Cihlar* and *Kenneth W. Rosenberg*, Attorneys, U.S. Department of Justice, were on the brief for appellee.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* Edwards.

Edwards, *Senior Circuit Judge*:  Peter Haver is a United States citizen who spent several years living and working in Germany.  The question in this case is whether a Treaty between

the United States and Germany relieved Haver of all obligations to pay income tax to the U.S. for the time when he was in Germany. Because Haver's German tax payments exceeded his tax liability under U.S. law, he argues that the Treaty relieves him of any obligation to the U.S. Treasury. The Government, in turn, relies on 26 U.S.C. § 59(a)(2)(A) (2000), which provides that foreign tax credits may only extinguish up to 90% of a U.S. citizen's minimum tax burden. Haver claims that the statute and the Treaty are inconsistent, and that the Treaty should control because it was ratified subsequent to the statute's promulgation. The Government insists that the Treaty and statute coexist harmoniously, because the Treaty explicitly contemplates modifying the foreign tax credit to conform to the "limitations of the law of the United States." The Tax Court rejected Haver's position, holding that the Treaty's reference to the limitations of U.S. law eliminates any potential conflict with the statute. *Haver v. CIR*, 89 T.C.M. (CCH) 1428 (2005). We affirm the judgment of the Tax Court.

## I. BACKGROUND

Haver lived and worked in Germany from 1997 through 2000. During those years, he received all of his income from sources outside the United States. Normally, U.S. citizens are subject to taxation on all of their income no matter where they live, *see* 26 C.F.R. § 1.1-1(a)-(b) (2005) (interpreting 26 U.S.C. § 1 (2000)), with possible offsets for foreign tax credits. In 2003, Haver and his wife filed joint federal income tax returns for their four years in Germany, claiming that their entire United States tax liability was offset by foreign tax credits. In claiming offsets, Haver relied on Article 23(1) of the Convention Between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation of August 29, 1989, 2 Tax Treaties (CCH) 77,021. This Treaty provision states:

Tax shall be determined in the case of a resident of the United States or a citizen thereof as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principles hereof), the United States shall allow to a resident or citizen of the United States as a credit against the United States tax on income

> (a) the income tax paid to the Federal Republic of Germany by or on behalf of such citizen or resident . . . .

In Haver's view, since the amount of tax he paid to Germany exceeded his tax liability under U.S. law, he owed nothing to the United States in income tax. He reported no alternative minimum tax ("AMT"), although under the law applicable at the time, U.S. citizens could offset no more than 90% of their AMT through foreign tax credits. 26 U.S.C. § 59(a)(2)(A) (2000). (This provision was repealed, effective in taxable years beginning after December 31, 2004, by the American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 421, 118 Stat. 1418, 1514 (2004).)

In reviewing Haver's submission, the Internal Revenue Service ("IRS") determined that Haver owed an AMT for the years he resided in Germany. Although the amount he paid in German taxes exceeded the amount he would owe in U.S. taxes, IRS concluded that under § 59(a) Haver still owed 10% of his AMT burden. His failure to pay U.S. income tax during his four years in Germany thus resulted in a $9,749 deficiency. There is no dispute over how much Haver paid in German taxes or what his AMT would be if § 59(a) applies. The only question in this case is whether Article 23(1) of the Treaty allows IRS to demand payment under the statute.

Haver sought review of IRS's determination in Tax Court, arguing that Article 23(1) superseded § 59(a). He urged the Tax Court to find § 59(a) inapplicable because it was originally enacted in 1986, *see* Tax Reform Act of 1986, Pub L. No. 99-514, § 701(a), 100 Stat. 2085, 2320 (1986), while the Treaty was ratified five years later, on August 21, 1991. Invoking the last-in-time doctrine, *see Whitney v. Robertson*, 124 U.S. 190 (1888), Haver argued that the two sources of law were in conflict and thus only the more recent enactment could have effect. The Tax Court rejected his position.

In its brief memorandum opinion, the Tax Court rested its analysis on two previous cases that had confronted the same issue. In *Pekar v. CIR*, 113 T.C. 158 (1999), the Tax Court found the statute compatible with the Treaty, holding that the language of Article 23(1) contemplates the tax credits interacting with limiting provisions of U.S. law. *Id.* at 163-64. Since it concluded that the two authorities existed harmoniously, the court did not need to address the last-in-time issue. *Id.* Similarly, in *Brooke v. CIR*, 79 T.C.M. (CCH) 2206 (2000), *aff'd* 13 Fed. Appx. 7 (D.C. Cir. 2001) (unpublished), the Tax Court again rejected the contention that the AMT clashes with Article 23(1). Citing *Pekar*, the Tax Court held that, "[b]ecause the treaty provision may be read in harmony with the AMT provision, petitioner is not excused from liability for the AMT." *Id.* at 2208. Accordingly, when Haver raised the same issue, the Tax Court said little beyond invoking those earlier cases: "We find no reason to depart from these holdings to follow petitioner down a twisting path of legal analysis whose ultimate destination would require us to reverse two prior holdings and find a provision of U.S. law in conflict with the U.S.-Germany treaty." *Haver*, 89 T.C.M. (CCH) at 1429.

## II. ANALYSIS

Haver seeks review of the Tax Court's decision, renewing his argument that § 59(a) cannot operate against him in light of

Article 23(1). The Tax Court's judgment rests solely on a question of law, so we review the decision of that court *de novo*. *Kappus v. CIR*, 337 F.3d 1053, 1055 (D.C. Cir. 2003).

Haver's invocation of the last-in-time doctrine bears no fruit in this case. "When [a statute and treaty] relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other. . . ." *Whitney*, 124 U.S. at 194. In this case, there is simply no conflict between the two authorities. As noted above, Article 23(1) conditions the tax credits U.S. citizens receive on "the limitations of the law of the United States (as it may be amended from time to time without changing the general principles hereof)." The Treaty thus contemplates that the tax credit is not unlimited, because it expressly defers to other provisions of U.S. law. Thus, we are faced with no conflict.

Guided by this very clear Treaty language, we find that the statute's chronological precedence actually strengthens the Government's position, not Haver's. Section 59(a) was an existing "limitation" of U.S. law when the Treaty was negotiated and executed. The negotiating parties thus had every reason to know that the Treaty would not afford a 100% tax credit and that an AMT of at least 10% would be charged by the United States. This interpretation also comports with the Treasury Department's Technical Explanation of the Treaty. 2 CCH Tax Treaties 77,235 ("[A]lthough the Convention provides for a foreign tax credit, the terms of the credit are determined by the provisions, at the time a credit is given, of the U.S. statutory credit."). To support Haver's position, the Treaty would have to indicate that the contracting parties intended to override inconsistent portions of U.S. law. In fact, it does just the opposite. We find the harmony between the Treaty and the statute dispositive.

In *Kappus*, we faced an interpretive dilemma posed by § 59(a)'s interplay with the anti-double tax provision in a U.S.-Canada Treaty, but left unresolved the question of whether the two were inconsistent. In that case, we found that the "question of whether the Treaty and statute can be harmonized as the government suggests is an extremely close one." *Kappus*, 337 F.3d at 1056. But *Kappus* raised interpretive difficulties that are not present here. The U.S.-Canada Treaty provision we examined contained a clause subjecting its tax credit to limitations of U.S. law, but it also explicitly conditioned the tax credit and arguably the limitation itself on subsequent paragraphs of the treaty. *Id.* at 1055. The parties thus wrangled over the relationship between two limiting provisions. *Id.* at 1056. No analogous difficulty is raised by this case.

Haver argues that the Government's position would allow the United States to deny the foreign tax credit to an unlimited extent, and thus effectively eviscerate the benefits of Article 23(1). Whether or not a more substantial AMT would conflict with the Treaty is a question that we need not answer here. As we have explained, § 59(a) was in place when the Treaty was adopted, so the parties to the Treaty had reason to know that the United States surely would impose a 10% minimum tax. Therefore, it is unnecessary for us to decide what more might have been contemplated by the provision in Article 23(1) that conditions the tax credit on limitations of U.S. law "as it may be amended from time to time without changing the general principles" of the Treaty. Nor need we ponder whether the United States may effectively abrogate the Treaty by enacting legislation that cannot be reconciled with the Treaty.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Tax Court is affirmed.