# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided October 16, 2009

No. 08-1253

WILLIAM DAVID JAMIESON AND JUDITH A. JAMIESON,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

Appeal from the United States Tax Court

———

*William David Jamieson* and *Judith A. Jamieson*, pro se, were on the briefs for appellants.

*Robert W. Metzler* and *Melissa Briggs*, Attorneys, U.S. Department of Justice, were on the brief for appellee. *John A. Nolet*, Attorney, entered an appearance.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: William David and Judith A. Jamieson are United States citizens who lived in Canada in 2003, earned Canadian income and paid Canadian

taxes on that income. On their U.S. income tax return for that year, they claimed foreign tax credits of $95,132 against their reported U.S. tax liability of $96,429, resulting in a net U.S. liability of $1297. They did not compute any alternative minimum tax ("AMT") liability under 26 U.S.C. § 55, noting on their return their position that a tax treaty between the United States and Canada precluded any such liability. The Commissioner of Internal Revenue rejected this position and, applying 26 U.S.C. § 59(a)(2)'s limit on foreign tax credits for AMT purposes, calculated that the Jamiesons owed $6078 in alternative minimum tax. The Tax Court, finding our decision in *Kappus v. Commissioner*, 337 F.3d 1053 (D.C. Cir. 2003), to be materially indistinguishable from this case, sustained the Commissioner's determination. See *Jamieson v. Commissioner*, 95 T.C.M. (CCH) 1430 (T.C. 2008). We affirm.

The Convention with Respect to Taxes on Income and on Capital, U.S.-Can., Sept. 26, 1980, T.I.A.S. No. 11,087, provides as follows:

> [D]ouble taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States . . . as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada.

*Id*. art. XXIV, para. 1.

A later act, the Tax Reform Act of 1986, limited the foreign tax credit for AMT purposes to 90% of the taxpayer's AMT liability. See Pub. L. No. 99-514, § 701(a), 100 Stat. 2320, 2337 (codified as amended at 26 U.S.C. § 59(a)(2)),

*repealed in relevant part by* American Jobs Creation Act of 2004, Pub. L. 108-357, § 421, 118 Stat. 1418, 1514. The Senate Finance Committee explained the new limitation as follows: "[T]he committee believes that taxpayers should not be permitted to use the credit to avoid *all* minimum tax liability . . . . [I]t is fair to require at least a nominal tax contribution from all U.S. taxpayers with substantial economic incomes." S. Rep. No. 99-313, at 520 (1986), *quoted in Jamieson*, 95 T.C.M. (CCH) at 1432.

In *Kappus*, two U.S. citizens living in Canada challenged 26 U.S.C. § 59(a)(2)'s limitation on foreign tax credits for AMT purposes, arguing that it "was in direct conflict with the U.S.-Canada Tax Treaty." 337 F.3d at 1054. In that case the IRS had proposed a reconciliation of the statute and treaty, a reconciliation that would have sustained the IRS's tax assessment. We assumed in favor of the taxpayer that the IRS's proposed reconciliation was incorrect, and then held that the limitation in § 59(a)(2) was controlling over the treaty because it was "last-in-time." We rejected the taxpayers' contention that protocols amending the treaty in 1995 and 1997 (thus post-dating enactment of § 59(a)(2)), which related entirely to issues other than those covered by § 59(a)(2), made the treaty last-in-time. See 337 F.3d at 1058-60.

The Jamiesons propose to distinguish *Kappus* by asserting a reconciliation in favor of the taxpayers, which *Kappus,* deciding *for* the government, could not have assumed away. Specifically, they argue that we could reconcile the treaty and the statute by allowing the taxpayers to claim foreign tax credits *after* their entire U.S. tax liability (including AMT) has been calculated. In their view, taxpayers first calculate their tax liability in accordance with the provisions of the Internal Revenue Code, including the 90% limitation on foreign tax credits for AMT purposes. If the tax liability thus calculated results in any double taxation,

then the treaty tax credits may be applied to reduce U.S. tax liability. Appellants' Br. at 27-28. Under this reading § 59(a)(2) normally would affect the total tax liability only of taxpayers who worked in a foreign country that, unlike Canada, did not have a treaty with the United States limiting "double taxation."

We find this interpretation implausible. Section 59(a)(2) does not on its face suggest that it was intended to have such a narrow impact. Nor do the Jamiesons cite any persuasive authority for the proposition that a revenue statute saying that a given credit "shall not exceed" a certain limit may be construed only to limit the amount that a taxpayer calculates provisionally, allowing the taxpayer to ignore the limit when later calculating his or her legally binding tax due. Cf. *Telecom\*USA, Inc. v. United States*, 192 F.3d 1068, 1072 (D.C. Cir. 1999) ("[A] taxpayer who seeks a deduction bears the burden of demonstrating a clear entitlement.").

Moreover, to the extent that there might be any ambiguity about whether Congress intended § 59(a)(2) to apply to taxpayers in countries with which the United States has "double taxation" treaties, Congress resolved that ambiguity with the Technical and Miscellaneous Revenue Act of 1988 ("TAMRA"), Pub. L. No. 100-647, 102 Stat. 3342. There it provided that certain amendments made by the Tax Reform Act of 1986, including those made by its title VII (of which § 59(a)(2) was a part), "*shall apply notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the [1986 Tax] Reform Act*." *Id.* § 1012(aa)(2) (codified at 26 U.S.C. § 861 note) (emphasis added). We found in *Kappus* that "TAMRA thus made it crystal clear that Congress intended the 90% cap on the AMT foreign tax credit to supercede any preexisting treaty obligation with which it conflicted." 337 F.3d at 1058. That finding completely precludes the Jamiesons' suggestion that the statutes and

treaty can be reconciled with an interpretation favorable to their position.

The judgment of the tax court is therefore

*Affirmed.*