**AMERICAN AIR LIQUIDE, INC. and Subsidiaries, Petitioner—Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent—Appellee.**

No. 01–70627.

IRS No. 20381–98.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2002.

Decided Aug. 29, 2002.

Before SCHROEDER, Chief Judge,
D.W. NELSON and REINHARDT,
Circuit Judges.

### MEMORANDUM *

American Air Liquide, Inc. ("American Air") appeals the IRS's notices of deficiency and argues that (1) the royalties should be considered general limitation income under the relevant statutory and regulatory framework, and (2) federal law and regulations establishing eligibility for the look-through exception impermissibly discriminate against American Air because of its French parent company in violation of a U.S.-France tax treaty. We reject both arguments and affirm the decision of the Tax Court.

■ The Internal Revenue Code generally classifies royalty income from a foreign source in the passive income basket. American Air, however, claims that two exceptions provided by the Code and corresponding Treasury Regulations apply in its case: the active business exception and the look-through exception. We disagree and find that neither exception applies.

The active business exception has two requirements: (1) the royalties must derive from the active conduct of business, and (2) the royalties must be received from an unrelated person. *See* 26 C.F.R. § 1.904–4(b)(2)(i); *see also* 26 U.S.C. § 954(c)(2)(A). The royalties in this case, paid by L'Air and received by American Air, do not qualify for the active business exception because they do not meet the second requirement.

The royalties received by American Air were not received from an unrelated person. Section 954(d)(3) of the Code defines a related person as any corporation that controls the U.S. taxpaying corporation through ownership of a majority of the taxpaying corporation's stock. 26 U.S.C. § 954(d)(3). In this case, American Air is the subsidiary of, and therefore related to, L'Air—who was the payor of the royalties in question. Thus, the active business exception cannot apply.

■ American Air, in response, urges us to consider the relevance of a proposed change to the exception noticed by the Treasury Department in the Federal Register. The proposed regulation would eliminate—but prospectively only—the active business exception's requirement that the royalties be from an unrelated person. *See* 66 Fed.Reg. 319, 320 (2001) (stating that the proposed change would only apply to royalties paid more than sixty days after the regulation was issued in final form). American Air suggests that we

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

may wish to defer consideration of this case until after the regulation is finalized because a) the IRS lacks discretion to apply the proposed regulation only prospectively, or b) the regulation in final form may drop the "prospective-only" limitation.

We decline to wait for the final regulation. American Air's first argument for deferral fails because the Secretary of the Treasury clearly has the discretion to make the proposed regulation at issue prospective only. Section 7805(b) of the Internal Revenue Code states that "[t]he Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." 26 U.S.C. § 7805(b); *see also Redhouse v. Comm'r*, 728 F.2d 1249, 1250–51 (9th Cir.1984); *Butka v. Comm'r*, 91 T.C. 110, 129, 1988 WL 75875 (1988) (explaining that § 7805(b) gives the Secretary of the Treasury discretion to make regulations prospective only). American Air's second argument, that the Secretary of the Treasury might have a change of heart and issue a final regulation with retroactive effect, is also unpersuasive. We take the Secretary's word in the Federal Register that the regulation will be prospective only. The suggestion that the Secretary may reverse his position at a subsequent date is far too speculative to cause us to refrain from deciding a case that is now ripe for decision.

■ The look-through exception provides that any royalties received by a U.S. taxpaying shareholder from a controlled foreign corporation ("CFC") may be placed in the same income category as used by the CFC. 26 U.S.C. § 904(d)(3)(C); *see also* 26 C.F.R. § 1.904–5. American Air

puts up only token resistance to the IRS's determination that the look-through exception does not apply.[1] American Air argues that a reserved paragraph in earlier proposed Treasury Regulations—that was titled "Special rule for payments from foreign parents to domestic subsidiaries" but contained no text—somehow operates to grant look-through treatment and require the IRS to treat the royalties it received as general limitation income. However, as the Third Circuit has recognized, a reserved paragraph has no legal force and is merely a place saver where text may be added in the future. *See Conn. Gen. Life Ins. Co. v. Comm'r*, 177 F.3d 136, 146 (3d Cir.1999). In addition, the so called reserved paragraph was deleted in the final regulations that were issued in 1992. Under these circumstances, a "textless" reserved paragraph that was subsequently deleted cannot be said to require look-through treatment for the royalties received by American Air.

American Air also argues that the failure to apply the look-through exception violates the nondiscrimination provisions of U.S.-France treaties. We decline to reach the question of whether any such discrimination exists. Even assuming the regulations do discriminate against American Air because of its French parent company, we find that the Treasury Regulations at issue here override any treaty obligation of the U.S.

The government correctly argues that later-in-time federal law takes precedence over the United States' treaty obligations. *Whitney v. Robertson*, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888). In this case, the Tax Reform Act passed in 1986 must therefore take precedence over Arti-

---

1. Instead, American Air spends the bulk of its time arguing that the failure of the look-through exception to apply violates U.S.- France treaty obligations. For the reasons we discuss *infra,* we find this argument unavailing.

cle 24(3), passed in 1967. If there were any doubt, a statute passed by Congress explicitly stated that the changes made by the 1986 Tax Reform Act "shall apply notwithstanding any treaty obligation of the United States ...." *See* Technical and Miscellaneous Revenue Act of 1988 ("TAMRA"), Pub.L. No. 100–647, § 1012(aa)(2), 102 Stat. 3342, 3531 (stating that the amendments made by § 1201 of the Tax Reform Act of 1986 apply notwithstanding any treaty obligation of the United States). Thus, and regardless of whether the failure to accord look-through treatment to the royalties in this case violates Article 24(3), federal law must take precedence and requires that the Tax Court's decision be affirmed.

American Air counters that federal law does not take precedence here because the prohibited discrimination was actually created by the extension of look-through treatment effected by Treasury Regulations and not by the Tax Reform Act itself. Even if American Air is correct that the regulations effect the alleged discrimination, we find that the argument fails. The regulations were issued pursuant to express Congressional authorization and are fully consistent with Congress' statutory scheme. To the extent the regulations abrogate (if they do at all) any treaty obligation, they only do so at the command and express authorization of Congress.

Indeed, Congress implicitly ratified the regulations as they were issued in their original form. Treas. Reg. § 1.904–5 was promulgated in the Federal Register on July 18, 1988. Congress enacted TAMRA, explicitly sanctioning any treaty obligations the Tax Reform Act of 1986 may have abrogated, on November 10, 1988.

Thus, Congress was on notice of the Treasury Regulations issued under the Tax Reform Act when it explicitly declared that the Tax Reform Act trumped any treaty obligations of the United States.

Accordingly, the decision of the Tax Court is **AFFIRMED**.