157 T.C. No. 4

UNITED STATES TAX COURT

CATHERINE S. TOULOUSE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19076-19L.                    Filed August 16, 2021.

        P is a U.S. citizen who resides in a foreign country.  P filed a
Federal income tax return claiming a carryover of her foreign tax
credit for tax that she paid to France and Italy in prior years to offset
the net investment income tax imposed by I.R.C. sec. 1411 for 2013.
R assessed the I.R.C. sec. 1411 tax, determined without the credit, as
a math error and an addition to tax for failure to pay a tax shown on a
return under I.R.C. sec. 6651(a)(2).  P did not pay the assessed
amount.  R issued to P notices of intent to levy and Federal tax lien
filing, and P filed a request for a collection review hearing pursuant to
I.R.C. secs. 6320 and 6330 challenging her tax liability.  After the
hearing, R issued a notice of determination sustaining only the levy
notice.  P concedes that the Code does not provide for a foreign tax
credit against the I.R.C. sec. 1411 tax but contends that article
24(2)(a) of the U.S. income tax treaty with France and article 23(2)(a)
of the U.S. income tax treaty with Italy establish independent bases
for a credit.  The parties filed cross-motions for summary judgment.

        <u>Held</u>:  P is not entitled to use a foreign tax credit to offset
I.R.C. sec. 1411 tax under article 24(2)(a) of the U.S. income tax

treaty with France or article 23(2)(a) of the U.S. income tax treaty with Italy.

Held, further, there are unresolved disputes of material fact with respect to P's liability for the I.R.C. sec. 6651(a)(2) addition to tax.

James V. Springer, for petitioner.

Scott A. Hovey, for respondent.

OPINION

GOEKE, Judge:  This case is before us on petitioner's motion for summary judgment and respondent's motion for partial summary judgment with respect to a notice of determination to sustain a proposed levy following a collection due process (CDP) hearing.  Respondent seeks to collect unpaid net investment income tax imposed by section 1411 for 2013, an addition to tax under section 6651(a)(2) for a failure to pay tax shown on a return, and interest.[1]

The primary issue for summary judgment is whether petitioner is entitled to a credit against the net investment income tax (foreign tax credit) on the basis of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), title 26, U.S.C., in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

certain provisions of the United States' income tax treaties with France and Italy. Petitioner maintains that she is, and respondent takes the opposite view. Respondent has not sought summary judgment with respect to petitioner's liability for the section 6651(a)(2) addition to tax and asserts that there is a dispute of material facts relating to whether petitioner's failure to pay timely is due to reasonable cause.

We hold that petitioner is not entitled to a foreign tax credit against the net investment income tax under the treaty provisions on which she relies. Accordingly, we will deny petitioner's motion for summary judgment and grant respondent's motion for partial summary judgment. Petitioner's liability for the section 6651(a)(2) addition to tax remains unresolved as a dispute of material fact exists with respect to that issue.

## Background

The following facts are derived from the parties' pleadings and motion papers including declarations and the exhibits attached thereto. Petitioner is a U.S. citizen and resided outside the United States when she timely filed her petition. She used a mailing address in France.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2013 under extension, with a filing status of married filing separately. She

reported tax on line 44 of $63,632, and she claimed a foreign tax credit of $63,632 to offset this tax on line 47. She attached to her return Form 1116, Foreign Tax Credit, that reported that she had paid $51,456 in tax to Italy and France for 2013. She also reported that she had a carryover of foreign tax credits of approximately $340,000 and used a portion of the carryover to offset her tax reported on line 44. Line 60 of her Form 1040, where taxpayers are to report net investment income tax, is blank. Line 60 is in the section of Form 1040 labeled "Other Taxes". On line 61, petitioner reported "total tax" of zero.

Petitioner attached Form 8960, Net Investment Income Tax--Individuals, Estates, and Trusts, to her return, reporting net investment income tax of $11,540. She reported this amount as required by the Form's instructions on line 17, which is labeled "Net investment income tax for individuals." Line 17 also instructs taxpayers on how to compute the tax and transfer the amount of the tax reported there to Form 1040, line 60. She modified Form 8960 by adding two lines under line 17. She labeled the first added line "Less: Foreign Tax Credit" and entered $11,540. This amount is in addition to the $63,632 of foreign tax credit that she claimed on line 47. She labeled the second added line "Net Investment Income Tax Due" and entered an amount of zero. She did not transfer the $11,540 net

investment income tax shown on Form 8960, line 17, to Form 1040, line 60, in accordance with the instructions on the Forms.

Petitioner also attached to her return two Forms 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b), disclosing her position that she used the foreign tax credit carryover to offset the net investment income tax. See sec. 904(c) (providing a 1-year carryback and a 10-year carryforward of unused foreign tax credits). She also attached Form 8275, Disclosure Statement, providing a detailed explanation of her position that article 24(2)(a) of the U.S. income tax treaty with France, the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital, Fr.-U.S., Aug. 31, 1994, 1963 U.N.T.S. 67, as supplemented by Protocols dated Dec. 8, 2004 and Jan. 13, 2009 (U.S.-France Treaty), and article 23(2)(a) of U.S. income tax treaty with Italy, the Convention for the Avoidance of Double Taxation With Respect to Taxes on Income and the Prevention of Fraud or Fiscal Evasion, Aug. 25, 1999, It.-U.S., Aug. 25, 1999, T.I.A.S. No. 09-1216, as supplemented by Protocol dated Aug. 25, 1999 (U.S.-Italy Treaty), permit a foreign tax credit against the net investment income tax.

On February 16, 2015, respondent mailed to petitioner a notice of a math error informing her of an $11,540 adjustment to her 2013 return. On that date,

respondent assessed tax of $11,540 pursuant to section 6213(b). Petitioner did not pay the assessed amount. By letter dated April 1, 2015, petitioner contested the assessment, asserting that no math error occurred and a foreign tax credit offset her liability for the tax. By letter dated February 1, 2016, respondent informed petitioner that her claim for a foreign tax credit had been disallowed on the basis that a foreign tax credit is inapplicable against the net investment income tax. On February 22, 2016, petitioner filed a written protest with the Internal Revenue Service's Office of Appeals (Appeals). An Appeals conference was held by telephone on September 7, 2017. By letter dated April 9, 2019, Appeals informed petitioner that she was not entitled to a foreign tax credit against the net investment income tax. The letter indicated that Appeals treated petitioner's protest as a claim for a refund.

Starting on April 20, 2015, petitioner received multiple collection notices from respondent. She received these collection notices after she had contested the assessment and received some of them after she filed the Appeals protest but had not received a decision. She responded to the notices by stating that the tax liability was contested or under consideration by Appeals and remained unresolved.

On August 20, 2018, respondent assessed an addition to tax under section 6651(a)(2) of $2,885 against petitioner for 2013 for a failure to pay tax shown on a return. On September 18, 2018, respondent issued to petitioner a final notice of intent to levy and notice of a right to a hearing, and on September 27, 2018, a notice of a Federal tax lien filing and right to a hearing for the unpaid, assessed tax and the addition to tax.

On October 16, 2018, petitioner timely requested a CDP hearing with respect to both notices and challenged her underlying liability for the net investment income tax. She again asserted that the foreign tax credit provided under certain provisions of the U.S.-France and U.S.-Italy Treaties fully offset her net investment income tax. Petitioner also objected to the lack of issuance of a notice of deficiency. She did not propose any collection alternatives. A telephone CDP hearing with petitioner's representative was held on March 13, 2019.

On September 24, 2019, respondent issued a notice of determination that sustained the proposed levy action but not the filing of the Federal tax lien. According to the notice of determination, the settlement officer determined that petitioner was not entitled to a foreign tax credit against the section 1411 tax. The notice further stated that the settlement officer did not have any prior involvement

with the tax year at issue and had verified that all legal and procedural requirements had been met.

## Discussion

## Standards for Summary Judgment

We will grant a motion for summary judgment where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. at 520. Petitioner has not alleged that a dispute of material fact exists on the issue of her liability for the net investment income tax. She asserts that the issue is a question of law regarding the availability of a foreign tax credit to offset the section 1411 tax. We find that the issue may appropriately be adjudicated summarily.

The petition initiating this collection review proceeding was filed pursuant to section 6330. Section 6330(b) provides that a taxpayer who timely requests a CDP hearing is entitled to a fair hearing with an impartial Appeals officer who has no prior involvement with the taxpayer. At the hearing, the Appeals officer must verify that the assessment was proper and that all other legal and administrative

requirements have been met. Sec. 6330(c)(1). The taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including the appropriateness of the collection action and offers of collection alternatives. Id. para. (2). The taxpayer may also raise challenges to the underlying tax liability but only where the taxpayer has not had a prior opportunity to dispute the liability. Id. subpara. (B). Respondent states that petitioner did not have an opportunity to dispute the underlying tax liability before the CDP hearing. We find that petitioner did not have the opportunity to challenge the underlying tax liability before the CDP hearing.

Where the validity of the underlying tax liability is properly at issue in a collection review proceeding, we will review the liability de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). Petitioner has challenged the validity of the underlying tax liability, and that issue is properly before us. As to any issue other than the underlying tax liability, we review the determination for abuse of discretion.[2] Goza v. Commissioner, 114 T.C. 176, 182 (2000). We determine

_____

[2] In her petition, petitioner alleged multiple procedural errors including that respondent improperly treated the adjustment as a math error and failed to abate the assessment upon her timely request. See sec. 6213(b)(2)(A) (requiring the Secretary to abate an assessment upon a taxpayer's request filed within 60 days of a math error notice and subjecting any reassessment to the deficiency notice procedures). Petitioner did not address these procedural issues in her motion.

(continued...)

whether the determination was arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Foreign Tax Credit

Under the Code, U.S. citizens are generally taxed on their worldwide income regardless of where they reside.  Crow v. Commissioner, 85 T.C. 376, 380-381 (1985).  Deductions against worldwide income and credits against tax are matters of legislative grace.  Segel v. Commissioner, 89 T.C. 816, 842 (1987). The Code is divided into subtitles, and subtitles are divided into chapters, which impose separate and distinct taxes.  Section 1, which is in chapter 1, subtitle A, Income Taxes, of the Code, imposes a tax on the taxable income of individuals (regular tax).  Compare ch. 1, sec. 26(b) (referring to tax imposed by section 1 as "regular tax liability") with ch. 23, sec. 3301 (imposing a tax on employers on wages that they pay to their employees).

---

[2](...continued)
However, in response to respondent's statement that they remain unresolved, petitioner stated that she does not seek review of the procedural errors and believes that they are immaterial as respondent has acknowledged that the underlying tax liability is subject to de novo review.  We have reviewed petitioner's tax liability de novo and find that petitioner has conceded any procedural errors.

Sections 21 through 54AA, also in chapter 1, subtitle A, provide for credits against the section 1 regular tax. Cf. ch. 23, sec. 3302(a) (providing a credit against employers' section 3301 tax on wages for amounts contributed to State unemployment compensation funds). Of relevance here, section 27 provides a credit for "[t]he amount of taxes imposed by foreign countries * * * against the tax imposed by this chapter to the extent provided in section 901." Section 901 provides a foreign tax credit against regular tax. It clearly states that "the tax imposed by this chapter [1] * * * [is] credited" with specified amounts. Thus, both sections 27 and 901 clearly provide that the foreign tax credit allowable under the Code reduces only tax imposed under chapter 1, such as the section 1 regular tax. See also sec. 61 (defining gross income for purposes of the section 1 regular tax); sec. 63(a) (defining taxable income for those purposes).

Section 1411 is in chapter 2A, subtitle A, Income Taxes. Thus, the foreign tax credit under section 27--which applies to "the tax imposed by this chapter [1]"--does not by its terms apply to offset net investment income tax. Section 1.1411-1(a), Income Tax Regs., provides that "[e]xcept as otherwise provided, all Internal Revenue Code (Code) provisions that apply for chapter 1 purposes in determining taxable income (as defined in section 63(a)) of a taxpayer

also apply in determining the tax imposed by section 1411."[3]  But tax credits

(including the foreign tax credit under section 27) are not taken into account in

determining taxable income under section 63(a).  See sec. 63(a) (defining "taxable

income" to mean gross income minus the deductions allowed by chapter 1 other

than the standard deduction).  Section 1.1411-1(a), Income Tax Regs., therefore

does not provide for a foreign tax credit against the net investment income tax.

Section 1.1411-1(e), Income Tax Regs., specifically addresses the issue of a

foreign tax credit against the net investment income tax and explains that the Code

does not provide a foreign tax credit against the section 1411 tax, stating:

> Amounts that may be credited against only the tax imposed by
> Chapter 1 of the Code may not be credited against the section 1411
> tax imposed by Chapter 2A of the Code unless specifically provided
> in the Code.  For example, the foreign income, war profits, and excess
> profits taxes that are allowed as a foreign tax credit by section 27(a),
> section 642(a), and section 901, respectively, are not allowed as a
> credit against the section 1411 tax.

Section 1411(a)(1) imposes a 3.8% tax on individuals "in addition to any

other tax imposed by this subtitle", i.e., subtitle A of title 26.  The tax is imposed

on the lesser of net investment income or the excess, if any, of modified adjusted

---

[3]The regulations under sec. 1411 apply for taxable years beginning after December 31, 2013, and for any taxable years that begin after December 31, 2012; but before January 1, 2014, for which the limitations period has not expired, taxpayers may apply the regulations.  Sec. 1.1411-1(g), Income Tax Regs.

gross income over $250,000 for married taxpayers, $125,000 for married taxpayers filing separately, and $200,000 for single taxpayers. Sec. 1411(a)(1), (b). Net investment income is defined as gross income from interest, dividends, annuities, royalties, rents, other gross income derived from a passive activity or a trade or business of trading in financial instruments or commodities, and net gain attributable to the disposition of property in such an activity or trade or business, less deductions allowed by subtitle A which are allocable to such gross income or net gain. Id. subsec. (c).

Petitioner concedes that the Code does not provide a foreign tax credit against the net investment income tax. Instead, she argues that article 24(2)(a) of the U.S.-France Treaty and article 23(2)(a) of the U.S.-Italy Treaty provide a foreign tax credit independent of the Code. Under the Constitution, treaties are given the same force and effect as legislation enacted by Congress. U.S. Const. art. VI, cl. 2; see sec. 7852(d)(1) ("For purposes of determining the relationship between a provision of a treaty and any law of the United States affecting revenue, neither the treaty nor the law shall have preferential status[.]"). To this end, section 894(a)(1) provides: "The provisions of this title [title 26] shall be applied to any taxpayer with due regard to any treaty obligations of the United States".

When interpreting a treaty, we begin with the text of the treaty and give the terms their ordinary meaning unless a more restricted sense is clearly intended. Am. Air Liquide, Inc. & Subs. v. Commissioner, 116 T.C. 23, 29 (2001), aff'd, 45 F. App'x 721 (9th Cir. 2002); see Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982). The plain meaning of a treaty's text controls unless its effect is contrary to the intent or expectations of the treaty partners. Sanchez-Llamas v. Oregon, 548 U.S. 331, 346 (2006); Sumitomo Shoji Am., Inc., 457 U.S. at 180; Amaral v. Commissioner, 90 T.C. 802, 812 (1988).

Treaties should generally be liberally construed to give effect to the purpose of the treaty. United States v. Stuart, 489 U.S. 353, 368 (1989); Estate of Silver v. Commissioner, 120 T.C. 430, 434 (2003). "[W]here a provision of a treaty fairly admits of two constructions, one restricting, the other enlarging, rights which may be claimed under it, the more liberal interpretation is to be preferred". Stuart, 489 U.S. at 368 (quoting Bacardi Corp. of Am. v. Domenech, 311 U.S. 150, 163 (1940)). Where a treaty and a statute relate to the same subject, courts attempt to construe them to give effect to both. Whitney v. Robertson, 124 U.S. 190, 194 (1888).

The U.S.-France and U.S.-Italy Treaties are intended to limit the effects of double taxation between the treaty partners and contain specific provisions that

provide each country's obligations to grant a foreign tax credit as part of the treaties' general goal of reducing the amount of double taxation. However, the plain text of the treaty provisions on which petitioner relies subject the terms of the Treaties, and thus any allowable credit, to the provisions and limitations of the Code.[4]

With respect to a foreign tax credit, article 24(2)(a) of the U.S.-France Treaty provides:

> In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen * * * of the United States as a credit against the United States income tax: * * *
>
> (i) the French income tax paid by or on behalf of such citizen * * *

Similarly, article 23(2)(a) of the U.S.-Italy Treaty provides:

> In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a * * * citizen of the United States as a credit against the

---

[4]Petitioner does not argue that she is entitled to relief under any other treaty provisions. Accordingly, we express no view on the potential application of other provisions. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Rule 121(d) ("When a motion for summary judgment is made * * *, an adverse party may not rest upon * * * mere allegations or denials * * *, but * * * must set forth specific facts showing that there is a genuine dispute for trial.").

United States tax on income the appropriate amount of income tax
paid to Italy * * *

Under the express terms of the articles of the Treaties that petitioner relies

on, any allowable foreign tax credit must be determined in accordance with the

Code and is limited by the Code's provision of a credit. Section 1411 was enacted

in 2010 and became effective for tax years beginning after December 31, 2012.

Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152,

sec. 1402(a)(1), 124 Stat. at 1061. Thus, petitioner's 2013 tax year is the first year

that she was subject to the section 1411 tax. We have stated that "the intention to

abrogate or modify a treaty is not to be lightly imputed to the Congress". Am. Air

Liquide, Inc. & Subs. v. Commissioner, 116 T.C. at 29 (quoting Menominee Tribe

v. United States, 391 U.S. 404, 413 (1968)). "A treaty will not be deemed to have

been abrogated or modified by a later statute, unless such purpose on the part of

Congress has been clearly expressed." Cook v. United States, 288 U.S. 102, 120

(1933).

The fact that section 1411 was enacted after the execution of the Treaties is

not determinative. The U.S.-France Treaty covers all "Federal income taxes

imposed by the Internal Revenue Code" and further states that its terms are subject

to identical or substantially similar tax imposed after the effective date of the

Treaty.  U.S.-France Treaty, art. 2(1) and (2).  The U.S.-Italy Treaty contains substantially the same provisions.  See U.S.-Italy Treaty, art. 2(2) and (3).

Petitioner maintains that the Treaties do not conflict with the Code because the Code is silent as to whether there is a foreign tax credit against the net investment income tax.  She refers to the placement of the tax in chapter 2A as happenstance and a clerical choice and argues that such a legislative decision should not override the Treaties' elimination of double taxation especially in the light of the lack of legislative intent to do so.  She argues that there is no explanation in the legislative history for Congress' decision to impose the net investment income tax under chapter 2A or any indication that Congress considered whether to provide a foreign tax credit against the net investment income tax.

Section 1411 is the only section in chapter 2A.  Congress created that chapter when it enacted the net investment income tax.  Health Care and Education Reconciliation Act of 2010, sec. 1402(a)(1).  Chapter 2A is titled "Unearned Income Medicare Contribution".  The placement of section 1411 in a newly created chapter was not happenstance.  An enumerated chapter of the Code to impose a distinct and separate tax is part of the Code's fundamental structure.

Petitioner argues that the enactment of the net investment income tax in chapter 2A is not a "limitation" as that term is used in the Treaties. She argues that any limitation of a foreign tax credit as set forth in the Treaties requires some affirmative statement and should not be imposed on the basis of Congress' silence on the issue. To further support her interpretation of the Treaties, she cites dictionary definitions of the terms "limitation" and "limit" and offers the following definitions of "limit": to assign certain limits to, prescribe, restrict the bounds or limits of, or curtail or reduce in quantity or extent.[5]

Petitioner focuses on the term "limitation" and ignores that the treaty provisions on which she relies require any foreign tax credit to be "in accordance with the Code". Those provisions expressly state that any allowable foreign tax credit is subject to the limitations of U.S. tax laws and must be in accordance with the Code. Accordingly, for petitioner to prevail on the basis of the provisions she cites, the Code must provide the credit if one exists. It is immaterial that the Code does not affirmatively state that a foreign tax credit against the net investment income tax is disallowed. Section 1411(c)(1)(B) expressly provides for deductions allowed by subtitle A in the computation of net investment income.

---

[5]Petitioner cites an online source for the definitions, https://www.merriam-webster.com.

There is no provision for any credits against the section 1411 tax. The enactment of a 3.8% net investment income tax as part of chapter 2A is a clear expression of congressional intent that credits against section 1 not apply against the section 1411 tax.

The Treaties recognize that U.S. tax laws may be subsequently amended "without changing the general principle hereof". U.S.-France Treaty, art. 24(2)(a); U.S.-Italy Treaty, art. 23(2)(a). Section 1411 was enacted after both Treaties. Imposition of the net investment income tax is not a change to the general principles of U.S. tax laws.

While the U.S.-France and U.S.-Italy Treaties provide for general protection against double taxation, they do not provide absolute protection. Their purpose is not to provide absolute protection. The general purpose of the Treaties is to reduce double taxation, but the specific provisions of each treaty must be applied as written. See Jamieson v. Commissioner, 584 F.3d 1074 (D.C. Cir. 2009), aff'g T.C. Memo. 2008-118; Pekar v. Commissioner, 113 T.C. 158 (1999); Haver v. Commissioner, T.C. Memo. 2005-137, aff'd, 444 F.3d 656 (D.C. Cir. 2006); Kappus v. Commissioner, T.C. Memo. 2002-36, aff'd, 337 F.3d 1053 (D.C. Cir. 2003). There is nothing in either article 24(2)(a) of the U.S.-France Treaty or article 23(2)(a) of the U.S.-Italy Treaty that entitles U.S. taxpayers to an

elimination of all double taxation. Article 29(2) of the U.S.-France Treaty recognizes the U.S. Government's right to tax its citizens on worldwide income. It further provides that when a U.S. citizen resides in a foreign country, that country has the primary taxing rights and the U.S. Government has an obligation to provide relief from double taxation. Id. Article 1(2) of the U.S.-Italy Treaty contains a similar provision.

Our reading of article 24(2)(a) of the U.S.-France Treaty is confirmed by the contemporary explanation provided by the Treasury Department, the Government agency charged with the Treaty's negotiation and enforcement. See Stuart, 489 U.S. at 369. The Treasury Department Technical Explanation to the U.S.-France Treaty explains:

> The credits provided under the Convention are allowed in accordance with the provisions and subject to the limitations of U.S. law, as that law may be amended over time, so long as the general principle of the Article, i.e., the allowance of a credit, is retained. Thus, although the Convention provides for a foreign tax credit, the terms of the credit are determined by the provisions of the U.S. statutory credit at the time a credit is given. The limitations of U.S. law generally limit the credit against U.S. tax to the amount of U.S. tax due with respect to net foreign source income within the relevant foreign tax credit limitation category (see Code section 904(a)). * * * [RIA Int'l Tax Treaty 3166.]

The preamble to the section 1411 regulations acknowledges the interaction between section 1411 and U.S. income tax treaties and explains that an analysis of

each U.S. income tax treaty would be required to determine whether the United States has an obligation under the treaty to provide a foreign tax credit against the section 1411 tax. T.D. 9644, 2013-51 I.R.B. 676, 679. That is what we have undertaken to do here.

Petitioner questions the purpose of the Treaties if there is no independent, treaty-based credit and a credit is allowable only if it is provided in the Code. But we do not so hold. Other provisions of the Treaties may well provide for credits that are unavailable under the Code. Petitioner, however, relies on provisions that by their express terms do not.

Petitioner also cites section 1.1411-1(a), Income Tax Regs., for support. The regulation provides: "Except as otherwise provided, all Internal Revenue Code (Code) provisions that apply for chapter 1 purposes in determining taxable income (as defined in section 63(a)) of a taxpayer also apply in determining the tax imposed by section 1411." As described above, however, taxable income as defined in section 63(a) does not take into account any credits against income tax. Thus, the regulation does not support petitioner's interpretation of the U.S.-France and U.S.-Italy Treaties.

Congress has allowed a foreign tax credit only against taxes imposed under chapter 1. There is no Code provision for a foreign tax credit against the net

investment income tax. Article 24(2)(a) of the U.S.-France Treaty and article 23(2)(a) of the U.S.-Italy Treaty do not provide an independent basis for a foreign tax credit against the net investment income tax.

Accordingly, petitioner is not entitled to a foreign tax credit against her net investment income tax.

Section 6651(a)(2) Addition to Tax

Respondent has assessed an addition to tax under section 6651(a)(2) for petitioner's failure to pay a tax shown on a return. The addition to tax applies only when an amount shown as tax on a return is not timely paid. See Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). Petitioner reported total tax of zero on her Form 1040. Accordingly, the section 6651(a)(2) addition to tax cannot be imposed with respect to her Form 1040. See Cabirac v. Commissioner, 120 T.C. 163 (2003), aff'd without published opinion, 94 A.F.T.R. 2d 2004-5490 (3d Cir. 2004). Respondent asserts that petitioner reported the section 1411 tax of $11,540 on Form 8960, line 17. Respondent appears to rely on the failure to pay that reported tax to impose the section 6651(a)(2) addition to tax and disregard the lines that petitioner added to the Form. For purposes of petitioner's motion for summary judgment with respect

to the addition to tax, we assume that Form 8960 is a return with an amount shown as tax of $11,540.

Petitioner argues that if she is liable for the underlying tax, she should not be liable for the section 6651(a)(2) addition to tax because of the disclosure with her return that she claimed a foreign tax credit under the Treaties and the substantiality of her legal argument.  The addition to tax does not apply if the failure to pay is due to reasonable cause and not due to willful neglect.  Reasonable cause exists if the taxpayer exercised ordinary business care and prudence and nevertheless either was unable to pay the tax or would suffer undue hardship.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect is generally a conscious, intentional failure or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent has not sought summary judgment on this issue.  We find that a genuine dispute of material fact exists with respect to whether petitioner had reasonable cause for her failure to pay timely.  Accordingly, we will deny petitioner's motion for summary judgment with respect to the addition to tax.

We have considered all other arguments made by the parties, and to the extent not discussed above find the arguments to be irrelevant, moot, or without merit. To reflect the foregoing,

<u>An appropriate order will be issued</u>.